**Ronald COPPINGER,
Plaintiff–Appellant,**

v.

**METRO–NORTH COMMUTER RAILROAD, Defendant–Appellee.**

**No. 80, Docket 88–7334.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 2, 1988.
Decided Nov. 3, 1988.

Paul T. Hofmann, New York City (Phillips Cappiello Kalban Hofmann & Katz, New York City, of counsel), for plaintiff-appellant.

Mary Ann Mills, New York City (Karen Timko, Walter E. Zullig, Jr., New York City, of counsel), for defendant-appellee.

Before CARDAMONE and PRATT, Circuit Judges and TENNEY, District Judge.*

CARDAMONE, Circuit Judge:

This appeal from a dismissal of plaintiff's complaint presents the single legal issue of whether a district court has jurisdiction to hear a discharged employee's claim for damages and equitable relief in an action brought under 42 U.S.C. § 1983, even though the discharge has been upheld in compulsory and binding arbitration pursuant to the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* (1982) (RLA).

## FACTS

On August 22, 1985 appellant Ronald Coppinger was employed by Metro–North Commuter Railroad (Metro–North) as a trackman. During appellant's lunchbreak in the company locker room at Grand Central Station in New York City, several supervisors entered the area where he and other Metro–North employees were seated and eating, and there observed bottles of liquor in some of the employee lockers and cups on the table at which the employees were seated. Suspecting that Metro–North rules had been violated, the supervisors sent the lunch group to the company medical department where blood and urine samples were taken in the presence of a registered nurse. Although the blood test indicated that appellant had not consumed alcohol, a "confirmed" urinalysis tested positive for the presence of cocaine metabolites, opiates, and THC (marijuana).

As a result, Coppinger was fired. Subsequently, he sought to have his dismissal vacated through arbitration proceedings brought under the RLA. On January 29, 1987 the Public Law Board (Board) upheld Coppinger's dismissal. He then instituted the instant civil rights action in the United

---

* Hon. Charles H. Tenney, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

States District Court for the Southern District of New York (Duffy, J.) under 42 U.S.C. § 1983 (1982). In his complaint Coppinger alleges that extracting blood and urine infringed on his Fourth Amendment right to be free from an unreasonable search and seizure. The complaint also asserts claims under the Fifth and Fourteenth Amendments and under Article I, §§ 6 and 12 of the New York Constitution. In essence, Coppinger contends that the procedures and techniques used by Metro–North to perform the tests denied him due process of law.

Metro–North moved to dismiss the complaint or, in the alternative, for summary judgment. Appellant cross-moved for summary judgment. The district court granted Metro–North's motion and dismissed appellant's complaint, holding that it lacked jurisdiction over the § 1983 claims. It ruled that Coppinger's claims fell within the exclusive and primary jurisdiction of the Public Law Board, and that he had failed to establish facts sufficient to warrant judicial review of that Board's decision. The district judge also stated that appellant had failed to allege a valid independent basis for it to assume jurisdiction over his § 1983 civil rights cause of action.

We agree with the district court's ruling that appellant had not alleged sufficient facts to justify review of the Board's decision, but cannot agree that appellant's separate and independent constitutional claims cognizable under § 1983 were properly dismissed for lack of jurisdiction.

## DISCUSSION

### A. *Colorable Fourth Amendment Violation Alleged*

■ Because it dismissed plaintiff's complaint, the district court made no findings and did not rule on the legality of Metro–North's blood and urine tests of Coppinger. Appellant challenges those tests in two ways. First, he argues that they were an unreasonable search and seizure under the Fourth Amendment of the U.S. Constitution and under Article I, Section 12 of the New York Constitution. Second, he contends that the tests denied him due process

of law under the Fifth and Fourteenth Amendments and under Article I, Section 6 of the New York Constitution. In view of the fact that an arguable Fourth Amendment claim has been stated, discussion is limited to "search and seizure," and the due process argument is not addressed.

A number of our sister circuits have held that compulsory urinalysis of public employees qualifies as a "search and seizure" within the meaning of the Fourth Amendment. *See National Fed'n of Fed. Employees v. Weinberger,* 818 F.2d 935, 942 (D.C.Cir.1987); *National Treasury Employees Union v. Von Raab,* 816 F.2d 170, 176 (5th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 1072, 99 L.Ed.2d 232 (1988); *McDonell v. Hunter,* 809 F.2d 1302, 1307 (8th Cir.1987); *Division 241 Amalgamated Transit Union v. Suscy,* 538 F.2d 1264, 1265 (7th Cir.), *cert. denied,* 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976). Finding that a "search" has occurred is the starting point for "the inquiry into the standards governing such searches." *New Jersey v. T.L.O.,* 469 U.S. 325, 337, 105 S.Ct. 733, 740, 83 L.Ed.2d 720 (1985). Determining whether a given search has been "unreasonable" requires a court to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed. 2d 110 (1983); *see also O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987).

A search may be "unreasonable" when an employer's suspicion of wrongdoing is not supported by objective facts and those rational inferences that may be drawn from them. *See Security & Law Enforcement Employees v. Carey,* 737 F.2d 187, 205 (2d Cir.1984) (applying the "reasonable suspicion" test to strip searches of prison guards); *see also McDonell,* 809 F.2d at 1308 (holding that selection for urinalysis must not be "arbitrary or discriminatory").

In his complaint appellant asserts that, prior to the time he was required to provide blood and urine samples, Metro–North had

no "reasonable or particularized" suspicion that he had violated the company's anti-drug regulations. It is undisputed that a supervisor found plaintiff sitting at a table in a locker room with several other employees and that there were cups on the table, which defendant further claims contained alcoholic beverages. Defendant also asserts that plaintiff exhibited signs of intoxication, which plaintiff denies. If defendant establishes these facts in the future, the search would appear to have been justifiable. If not, plaintiff could reasonably argue that it was unlawful. *See Ybarra v. Illinois,* 444 U.S. 85, 90–91, 100 S.Ct. 338, 341–42, 62 L.Ed.2d 238 (1979).

Therefore, we believe that plaintiff may be able to establish a colorable claim under section 1983 for violation of his Fourth Amendment rights, recognizing of course that the judgment eventually reached will hinge on as yet unmade findings respecting the sufficiency of the factual basis upon which defendant based the alleged search.

## B. *Jurisdiction Exists Over Constitutional Claims*

An analysis of the district court's ruling that it lacked jurisdiction to entertain Coppinger's § 1983 claims on the grounds that binding arbitration under the RLA was the sole and exclusive remedy for the causes of action asserted in his complaint must be undertaken.

The exclusive remedy for wrongful discharge and other "minor disputes" under the Metro–North collective bargaining agreement is the federal dispute resolution procedure created by the RLA. 45 U.S.C. §§ 151 *et seq.* Such "minor disputes" initially must be pursued through the railroad's internal procedures and, if not settled there, may be submitted to a division of the National Railroad Adjustment Board. Section 3 of the RLA establishes that Board and limits judicial review of its decisions. *See Atchison, Topeka and Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987); *Union Pacific R.R. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam).

In enacting the RLA "Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad employee disputes arising out of the interpretation of collective-bargaining agreements." *Sheehan,* 439 U.S. at 94, 99 S.Ct. at 402. We recognize that judicial review of Board decisions is therefore quite limited.

Appellant in the case at hand does not seek review of the Board's determination. He attempts instead to pursue separate and independent causes of action upon statutory and constitutional grounds. We cannot adopt Metro–North's argument that the RLA provides sole and exclusive remedy for the wrongs complained of in this case, nor can we agree that the RLA preempts Coppinger's civil rights action. *Buell,* 107 S.Ct. at 1410; *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1973). As the Supreme Court stated in *Gardner–Denver*

In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under [the federal statute], an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be pursued in their respectively appropriate forums.

415 U.S. at 49–50, 94 S.Ct. at 1020. Coppinger cannot be deprived of his "statutory right to attempt to establish his claim in federal court," *Gardner–Denver,* 415 U.S. at 56, 94 S.Ct. at 1023, because his civil rights claim has a "legally independent origin[ ]" and, is "equally available" to him as an aggrieved employee. *Id.* at 52, 94 S.Ct. at 1022.

In *Buell,* the Supreme Court held that the RLA's binding arbitration provisions did not deprive the district court of jurisdiction to hear an employee's claim against his employer for personal injuries arising under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 *et seq.* (1982). In that case, Buell stated that he had suffered injuries as a result of the railroad's failure to provide him with a "safe workplace." Contending that the court lacked subject matter jurisdiction, the railroad argued that claimant was required to resort to the grievance machinery established under the RLA, and that such arbitration was his sole remedy since his claim was a "minor dispute" over which the Board had exclusive jurisdiction.

The Supreme Court unanimously rejected this argument. It noted that the RLA did not preempt other federal statutes that provide rights outside the scope of those covered by the RLA. *Buell,* 107 S.Ct. at 1415. Notwithstanding the deference normally accorded the RLA's arbitration system, claimant could maintain a cause of action asserted under the FELA because " 'different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.' " *Id.* at 1415 (quoting *Barrentine,* 450 U.S. at 737, 101 S.Ct. at 1443). Writing for the Court, Justice Stevens noted that the FELA provided injured workers with a remedial scheme that was separate and distinct from the remedies accorded under the RLA, and that it was "inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion." *Id.* 107 S.Ct. at 1415–16.

For purposes of the narrow jurisdictional question now before us, we are persuaded that there is no principled basis upon which to distinguish § 1983 from the FELA at issue in *Buell.* In enacting § 1983 Congress aimed to create an independent statutory scheme for redressing constitutional wrongs to aggrieved individuals by providing a federal cause of action. Nothing in the statutory plan suggests that a prior determination in an arbitration proceeding prevents a plaintiff from bringing suit in federal court or divests that court of jurisdiction. *Alexander v. Gardner–Denver,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *see also Lingle v. Norge Division of Magic Chef, Inc.,* —— U.S. ——, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988) (arbitration provisions of the LMRA do not preempt state law claims arising under same facts if those claims did not entail construing collective bargaining agreement); *McAlester v. United Air Lines, Inc.,* 851 F.2d 1249, 1255–56 (10th Cir.1988) (holding that 42 U.S.C. § 1981 was not preempted by the RLA and that statutory civil rights remedies "supplement" existing remedies under employment statutes and under collective bargaining agreements); *Pender v. National R.R. Passenger Corp.,* 625 F.Supp. 252 (D.D.C. 1985) (same), *rev'd on other grounds,* 809 F.2d 930 (D.C.Cir.1987); *see also Halko v. New Jersey Transit Rail Operations, Inc.,* 677 F.Supp. 135, 136 n. 1 (S.D.N.Y.1987).

More recently in *Webster v. Doe,* —— U.S. ——, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), the Supreme Court stated that when Congress' purpose is to preclude judicial review of a constitutional claim it must make its purpose plain. *Id.* 108 S.Ct. at 2053. No such aim may be discerned in either the RLA or § 1983. In *Webster,* a CIA employee was discharged pursuant to § 102(c) of the National Security Act, 50 U.S.C. § 403(c) (1982), on the grounds that his homosexuality posed a security risk. The employee sought reinstatement under the provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.,* alleging that the Director's action was arbitrary and capricious, an abuse of discretion, violative of agency policy, and in contravention of plaintiff's rights under a variety of constitutional theories.

Upon review of the legislative history of § 102(c), the Court ruled that the termination of individual employees was a power committed to the Director's discretion. *Id.* at 2053. It held that under APA

§ 701(a)(2) a broad sphere of discretionary powers existed which permitted the Director to make employment decisions unfettered by the ordinary dictates of the APA. *Id.* Hence, plaintiff was foreclosed from seeking judicial review of his termination under the APA's otherwise applicable provisions. But, the Court continued, absent a Congressional plan to foreclose plaintiff's remedies under Title VII, the district court should have entertained his causes of actions "to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* at 2053 (citing *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 681 n. 12, 106 S.Ct. 2133, 2141 n. 12, 90 L.Ed.2d 623 (1986)).

Thus, Metro–North's assertion that appellant has not alleged sufficient grounds to warrant judicial review of the Board's decision is not dispositive. The district court was not asked to review the Board's decision, but rather had before it, among others, a cause of action stating a colorable claim under § 1983.

Again, applying the reasoning of *Webster* and *Buell* compels the conclusion that the appellant's constitutional claims must be reviewed by the district court. Denial of jurisdiction in this case is particularly significant given Congress' plan in enacting § 1983 to provide a method by which aggrieved individuals may vindicate their constitutional rights. To embrace appellee's argument that railroad workers are prevented from asserting claims under § 1983 by virtue of the RLA's purported preemptive effect would effectively create a class of citizens who would receive less constitutional protection than those not preempted, clearly contravening the spirit and purpose of § 1983's remedial scheme. We hold therefore that the rights guaranteed all citizens by the Fourth Amendment and under § 1983, and the strong public policy favoring arbitration that underlies the RLA must allow appellant to pursue his contractual remedy under the RLA and his separate cause of action under § 1983 independently of one another.

## C. *Proceedings Before Board Not Res Judicata*

■ Finally, we address Metro–North's assertion that appellant was afforded a full and fair opportunity to raise his Fourth Amendment claims before the Board and that the district court's jurisdictional ruling does not therefore deprive him of due process of law. This argument is rejected for four reasons: (1) arbitrators' possible lack of familiarity with the complex public policy considerations underlying § 1983; (2) arbitrators' lack of authority to apply statutory law under the collective bargaining agreement; (3) arbitral procedures less protective of individual constitutional guarantees; and (4) the arbitration board is without authority to grant the full range of relief sought by appellant in his district court suit. We discuss these reasons in order.

First, the Supreme Court has acknowledged that "the specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land." *Gardner–Denver,* 415 U.S. at 57, 94 S.Ct. at 1024 (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)); *see also Buell,* 107 S.Ct. at 1415–16; *McDonald v. West Branch,* 466 U.S. 284, 292, 104 S.Ct. 1799, 1804, 80 L.Ed.2d 302 (1984); *Barrentine,* 450 U.S. at 738–39, 101 S.Ct. at 1443–44. In contrast, the final resolution of the statutory and constitutional claims asserted by plaintiff is squarely within the primary responsibility of the courts. Moreover, the legal and factual issues raised under the Fourth Amendment and under § 1983 are at least arguably beyond the competence of the ordinary arbitrator whose primary expertise concerns "the demands and norms of industrial relations." *Gardner–Denver,* 415 U.S. at 57, 94 S.Ct. at 1024.

Second, assuming the Board's competence to interpret and apply § 1983, it nonetheless still lacks the authority to do so under the collective bargaining agreement. As the Supreme Court noted in *Barrentine,* "[a]n arbitrator's power is both derived from, and limited by, the collective

bargaining agreement." 450 U.S. at 744, 101 S.Ct. at 1446. While essential to the smooth functioning of the collective bargaining process, arbitrators are not vested with broad power to apply and interpret the civil rights statutes, much less the United States Constitution. The arbitrator's rule is circumscribed by his charge to construe and apply a negotiated agreement between an employer and its employees, and he has no commission to substitute his own notions of justice in the labor law arena. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Thus, because the Board is compelled to carry out the provisions of the Metro–North contract rather than to enforce the statute, arbitration by the Board does not sufficiently protect appellant's due process right to have his constitutional claims fully and fairly adjudicated in a judicial forum.

Third, the arbitral procedures employed by the Board are less protective of constitutional guarantees than are the procedures employed in the United States courts. It has been emphasized that arbitral fact-finding is not the equivalent of judicial fact-finding. *See, e.g., McDonald*, 466 U.S. at 290–91, 104 S.Ct. at 1803–04; *Gardner–Denver*, 415 U.S. at 57–58, 94 S.Ct. at 1024–25; *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1956); *Wilko v. Swan*, 346 U.S. 427, 435–38, 74 S.Ct. 182, 186–89, 98 L.Ed. 168 (1953). Examples abound. Arbitration does not carry with it the right to a trial by jury; arbitrators are not generally required to give the reasons for their decisions; the record of arbitral proceedings generally is not as complete as a trial record; judicial review of Board decisions is more limited than review of district court proceedings; the Federal Rules of Evidence and of Civil Procedure do not apply; and other rights such as testimony under oath, cross-examination, discovery, and compulsory process are restricted. In short, where suits are tried is often as important as the substantive rights sought to be vindicated. *See Bernhardt*, 350 U.S. at 203, 76 S.Ct. at 276. This axiom of American law rings particularly true in this case where these rights entail the interpretation and application of both the New York and Federal Constitutions.

Fourth, and finally, the arbitration board in this case would not have been able to grant the full range of relief sought by Coppinger in his district court action. Had the Board found that appellant was improperly discharged, its award would necessarily have been limited to the remedies available under the RLA. Those remedial pow-. ers consist primarily of payment for back wages and reinstatement. *See Buell*, 107 S.Ct. at 1415, n. 12; *Lewy v. Southern Pacific Transportation Co.*, 799 F.2d 1281, 1295 (9th Cir.1986). In the instant litigation appellant seeks compensation for the "injuries" he has allegedly suffered and equitable relief in the form of removal from his employment records of all references to the test results. These are remedies that the Board—unlike an Article III judge—is without power to grant. Hence, the remedies available in the arbitral forum, though effective for the resolution of "minor disputes" under the collective bargaining agreement, are patently inadequate as a means of resolving appellant's constitutional claims under § 1983.

For the foregoing reasons we also conclude that the arbitral determination made here by the Board is not *res judicata* with respect to the district court action. There is no indication in the record that appellant's constitutional claims were considered or determined by the Board. Appellant must be permitted to proceed in court.

## CONCLUSION

Accordingly, the RLA and its binding arbitration provisions cannot be read to deprive appellant of a forum in which to litigate his causes of action under § 1983, and these claims should not have been dismissed on jurisdictional grounds. The order of dismissal appealed from is reversed and the case is remanded to the district court for further proceedings on the merits.

**REVERSED AND REMANDED.**