[No. E004283. Fourth Dist., Div. Two. Nov. 15, 1988.]

MILO EQUIPMENT CORPORATION, Plaintiff and Appellant, v. ELSINORE VALLEY MUNICIPAL WATER DISTRICT et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

---

*Parts I and II are not published; they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

**COUNSEL**

Davis, Samuelson, Blakely & Goldberg and Mitchell Samuelson for Plaintiff and Appellant.

Jones, Mahoney & Brayton, Paul M. Mahoney, Richard A. Soll and Thomas Brayton for Defendants and Respondents.

**OPINION**

## INTRODUCTION

**DABNEY, J.**—Milo Equipment Corporation (Milo) appeals from a summary judgment in favor of the Elsinore Valley Municipal Water District (Water District) and Cornish Construction Company (Cornish). The operative facts are undisputed. The Water District contracted with Cornish for the construction of a public work of improvement on the Water District's

property. Cornish filed a payment bond as required by Civil Code sections 3247-3252, on which the sureties were Fairmont Insurance Company (Fairmont) and Employers Reinsurance Corporation. Cornish subcontracted with Cities Development Group, Inc. (Cities) for a portion of the work, and Cities posted a payment bond in favor of Cornish on which Capital Bond and Insurance Company (Capital) was surety. Cities rented heavy construction equipment from Milo, and Milo served a timely 20-day preliminary notice (Civ. Code, § 3098) on the Water District and Cornish. Milo was never paid the $41,163.50 it claimed was owed it for the use of its equipment. Milo served a verified stop notice (Civ. Code, § 3186) on the Water District on November 1, 1985, directing the Water District to withhold the sum of $41,163.50 from the funds due to Cornish. The Water District then had sufficient funds due to Cornish to answer Milo's claim. On January 31, 1986, Milo filed its complaint against the Water District, Cornish, and Cities in the instant lawsuit for breach of contract, stop notice, common counts, and payment on bond. Milo later named Fairmont and Capital as Doe defendants. Cities failed to answer the complaint, and its default was taken.

While the action was pending in the trial court, Cornish filed with the Water District a bond, obtained from Capital, for the release of stop notice funds. (Civ. Code, § 3196.) On receipt of the bond, the Water District released the funds withheld under Milo's stop notice. Over objection, the Water District was granted leave to amend its answer to Milo's complaint to allege the release of funds pursuant to the release bond as an affirmative defense. Meanwhile, Capital filed a notice of order appointing conservator, which restrained all actions against Capital, and Milo dismissed Fairmont as a defendant for reasons not clear from the record.

On February 28, 1987, the Water District and Cornish moved for summary judgment. The motion was heard on March 27, 1987 and thereafter granted.

DISCUSSION

I, II*

·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

---

*See footnote, *ante,* page 1282.

## III

On April 12, 1988, this court filed its opinion affirming the decision of the trial court as to Cornish. Milo filed a petition for rehearing on the basis of an issue it raised for the first time at oral argument. We declined to address that issue in our original opinion. However, on May 3, 1988, we decided to exercise our discretion to review this issue on the merits, and granted Milo's motion for rehearing. (See *Canal-Randolph Anaheim, Inc.* v. *Wilkoski* (1978) 78 Cal.App.3d 477 [144 Cal.Rptr. 474]; *Traders etc. Ins. Co.* v. *Pac. Emp. Ins. Co.* (1955) 130 Cal.App.2d 158 [278 P.2d 493].) We requested the parties to provide supplemental briefing on the sole issue of the applicability of the Bond and Undertaking Law (Code Civ. Proc., § 995.010 et seq.) to the liability of Cornish.

Although the trial court was not asked to rule on the applicability of the Bond and Undertaking Law, the issue presents solely a question of law. In reviewing a grant of summary judgment, when the issue on appeal is one of law the appellate court is free to draw its own conclusions of law from the undisputed facts. (Code Civ. Proc., § 437c; *Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744].)

## IV

Milo argues that under Code of Civil Procedure section 996.410, subdivision (a)[3] Milo, as the beneficiary of the stop notice release bond, can enforce the bond against the principal, Cornish, as well as against the sureties. Under the explicit language of the statute, Cornish is liable under the stop notice release bond it filed with the Water District. However, Cornish disputes this liability. Cornish argues that the Bond and Undertaking Law does not apply to the stop notice release bond Cornish furnished pursuant to Civil Code section 3196 because (1) the Bond and Undertaking Law applies primarily to bonds given ancillary to court proceedings, not to stop notice release bonds; (2) Civil Code section 3196 was never modified or repealed after the enactment of the Bond and Undertaking Law; and (3) stop notice release bonds are governed by a specific statutory scheme that is inconsistent with the Bond and Undertaking Law.

In 1982, the Legislature enacted the Bond and Undertaking Law to codify in one chapter the provisions relating to bonds and undertakings, the liabilities and responsibilities of the parties to those instruments, and the

---

[3] The statute states: "The beneficiary may enforce the liability on a bond against both the principal and sureties." (Code Civ. Proc., § 996.410, subd. (a).)

methods of enforcement that had previously appeared in various statutes and case law. This new statutory scheme applies to all "bond[s] or undertaking[s] executed, filed, posted, furnished, or otherwise given as security pursuant to any statute of this State, except to the extent the statute prescribes a different rule or is inconsistent." (Code Civ. Proc., § 995.020, subd. (a).)

The California Law Revision Commission Recommendation relating to statutory bonds and undertakings states: "Statutes throughout the codes of California permit or require the giving of bonds or undertakings. For example, an undertaking may be necessary to procure a provisional remedy such as attachment, claim and delivery, or a temporary restraining order or preliminary injunction, or to stay enforcement of a judgment on appeal. Bonds are required of government officials and of many permittees and licensees. In all, the codes provide for more than 500 different bonds and undertakings, each governed by similar but not identical procedural statutes.

"The proliferation of procedural statutes to govern bonds and undertakings is unnecessary. The rules applicable to such matters as the manner of execution of a bond or undertaking, the number or qualifications of sureties, the giving of a new or additional bond or undertaking if the original bond or undertaking becomes insufficient, the limitation on liability of a surety to the amount of the bond or undertaking, and the ability to give a cash or equivalent deposit in lieu of a bond or undertaking, are the same for all bonds and undertakings. Repetition of such procedural rules in every statute that provides for a bond or undertaking is not only wasteful and adds to the complexity and length of the statutes, but also creates the likelihood of inconsistent wording and interpretation where the rules should be the same.

"In the past, efforts have been made to consolidate general procedural rules applicable to all statutory bonds and undertakings in one place in the Code of Civil Procedure. These efforts are incomplete; however, the Law Revision Commission recommends that the procedural bond and undertaking provisions be compiled into one statute and that the duplicate provisions be repealed or deleted from the codes.

"Consolidation of the numerous similar statutes to create one uniform statute necessarily involves many changes in wording, a few variations from existing procedures, and an occasional minor substantive change. The changes made in existing law by the proposed statute are noted in the Comments that follow each amended or repealed provision of existing law in the draft of conforming changes attached to this recommendation. The

Commission believes that any inconvenience caused by the small changes in law is outweighed by the advantages of uniformity in this area of the law." (16 Cal. Law Revision Com. Rep. (1982) p. 501.)

In our original opinion we concluded that the stop notice bond was a statutory bond, under which the terms of the statute limited the principal's liability. We based our decision on *Powers Regulator Co.* v. *Seaboard Surety Co.* (1962) 204 Cal.App.2d 338 [22 Cal.Rptr. 373]. However, the decision in *Powers* was inconsistent with *Hollywood etc. Co.* v. *John Baskin, Inc.* (1953) 121 Cal.App.2d 415 [263 P.2d 665], in which the court assumed without deciding that the principal on a statutory labor and materials bond was liable to the plaintiff. Moreover, the *Powers* decision predated the enactment of the Bond and Undertaking Law. Statutory bonds must be interpreted under that law, which expressly provides for the liability of the principal.

Cornish is correct that Civil Code section 3196[4] was not modified or amended after the enactment of the Bond and Undertaking Law. However, this does not lead us to conclude that the Legislature did not intend the Bond and Undertaking Law to apply to a stop notice release bond. An equally persuasive inference is that with respect to the liability of a principal on a bond, the Legislature believed that section 3196 did not conflict with the Bond and Undertaking Law.

## V

Cornish argues that the Bond and Undertaking Law was not intended to cover stop notice release bonds. Cornish contends that unlike stop notice release bonds, bonds governed by the Bond and Undertaking Law are almost invariably bonds given in connection with a court proceeding, such as a writ of attachment, an order for claim and delivery, a preliminary injunction, or a stay of execution. Cornish cites to Code of Civil Procedure section 996.440 for the proposition that enforcement of such bonds is through a motion in the court where the bond has been filed, not through a civil lawsuit.

Contrary to Cornish's assertion, the Bond and Undertaking Law is not limited to bonds filed ancillary to court proceedings. The California Law Revision Commission report noted that prior to the new law, the various

---

[4] "Upon the filing of [a stop notice release] bond with the public entity, the public entity shall not withhold any money . . . from the original contractor on account of the stop notice. The surety or sureties upon such bond shall be jointly and severally liable to the stop notice claimant with the surety or sureties upon any payment bond furnished pursuant to Chapter 7 . . . ." (Civ. Code, § 3196.)

codes provided for more than 500 different bonds and undertakings. Although many of these bonds are issued in connection with court proceedings, many others are not. Furthermore, contrary to Cornish's assertion, the Bond and Undertaking Law expressly provides that the liability on a bond may be enforced in a separate civil action. (Code Civ. Proc., § 996.430, subd. (a).) We conclude that the Bond and Undertaking Law applies to stop notice release bonds provided under Civil Code section 3196.

## VI

Finally, Cornish contends that this case is governed by the axiom of statutory construction that when a general statute is inconsistent with a specific statute, the latter controls. (*In re Shull* (1944) 23 Cal.2d 745 [146 P.2d 417]; see also Code Civ. Proc., § 995.020, subd. (a).) While this is an accurate statement of an abstract principle of law, it does not apply here.

Cornish characterizes the Mechanic's Lien Law, and particularly Civil Code section 3196, as a specific statutory scheme which is inconsistent with the general procedural scheme set forth in the Bond and Undertaking Law. Cornish claims that Civil Code section 3196, which provides that when more than one surety is required by statute, the *sureties* will be jointly and severally liable, is inconsistent with Code of Civil Procedure section 996.410, subdivision (a). (See fn. 3, *ante.*) We see no such inconsistency. Civil Code section 3196 simply does not address the liability of the *principal* with respect to sureties and the beneficiary. We conclude that the explicit language of Code of Civil Procedure section 996.410, subdivision (a) governs our decision. Cornish, as a principal, is liable to Milo on the stop notice release bond. In the trial court, Milo must therefore establish its entitlement to the funds claimed.

### DISPOSITION

The judgment in favor of the Elsinore Valley Municipal Water District is affirmed. The judgment in favor of Cornish Construction Company is reversed.

Campbell, P. J., and Hews, J., concurred.

A petition for a rehearing was denied December 7, 1988, and respondents' petition for review by the Supreme Court was denied January 25, 1989.