[No. B033144. Second Dist., Div. Seven. Sept. 15, 1989.]

WILLIAM DAVID EVANS, Plaintiff and Appellant, v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY,
Defendant and Respondent.

**COUNSEL**

Fogel, Feldman, Ostrov, Ringler & Klevens and Richard L. Rosett for Plaintiff and Appellant.

Breidenbach, Swainston, Crispo & Way, Donald A. Way and Richard E. Rico for Defendant and Respondent.

**OPINION**

**LILLIE, P. J.**—Plaintiff, William David Evans, appeals from summary judgment entered in favor of defendant, Southern Pacific Transportation Company, and against plaintiff in an employment discrimination action. Plaintiff also appeals from order denying his motion to tax costs.[1]

---

[1] The order is appealable. (Code Civ. Proc., § 904.1, subd. (b); *Lacey* v. *Bertone* (1949) 33 Cal.2d 649, 654 [203 P.2d 755]; *Jimenez* v. *City of Oxnard* (1982) 134 Cal.App.3d 856, 858, fn. 3 [184 Cal.Rptr. 864].)

## FACTS

In June 1980, while employed by defendant as an electrician, plaintiff sustained personal injuries in the course of his employment. In April 1983 plaintiff commenced an action against defendant under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 et seq.) seeking damages for his injuries. (L.A. Super. Ct. case No. C-448486.) In August 1983 plaintiff allegedly had the smell of alcohol on his breath while he was on defendant's premises in the performance of his duties. Pursuant to the collective bargaining agreement between defendant and the International Brotherhood of Electrical Workers (IBEW), of which plaintiff was a member, a hearing was held regarding plaintiff's alleged violation of rule G which prohibits employees of railroads from possessing alcohol or being intoxicated while on duty.[2] As a result of the hearing defendant fired plaintiff in September 1983. Plaintiff, represented by the general chairman of the IBEW, appealed his dismissal. The appeal was denied and plaintiff remained dismissed until July 1985 when he was reinstated by defendant on a leniency basis.

In September 1984, pursuant to the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), plaintiff sued defendant for employment discrimination. (L.A. Super. Ct. case No. C-514091.) The complaint, which sought damages and injunctive and declaratory relief, alleged that defendant discriminated against plaintiff by firing him because he is Black and because he suffers from a physical handicap that resulted from the injuries he sustained in July 1980 due to defendant's negligence. On plaintiff's motion the personal injury action and the employment discrimination action were consolidated.

Defendant moved for summary judgment in the employment discrimination action on the ground said action is preempted by the federal Railway Labor Act (RLA) (45 U.S.C. § 151 et seq.). The motion was granted and summary judgment was entered in favor of defendant and against plaintiff. Plaintiff moved to tax costs claimed by defendant. The motion was denied.

Plaintiff appeals from the judgment and from the order denying his motion to tax costs.

---

[2] The record does not include the text of rule G. That regulation recently was described by the United States Supreme Court: "For many years, railroads have prohibited operating employees from possessing alcohol or being intoxicated while on duty, and from consuming alcoholic beverages while subject to being called for duty. More recently, these proscriptions have been expanded to forbid possession or use of certain drugs. These restrictions are embodied in 'Rule G,' an industry-wide operating rule promulgated by the Association of American Railroads, and are enforced, in various formulations, by virtually every railroad in the country. The customary sanction for Rule G violations is dismissal." (*Skinner* v. *Railway Labor Exec. Assn.* (1989) 489 U.S. 602, __[103 L.Ed.2d 639, 653, 109 S.Ct. 1402].)

DISCUSSION

I

APPEAL FROM JUDGMENT

A

Summary judgment is proper only where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); *Chong* v. *Fremont Indemnity Co.* (1988) 202 Cal.App.3d 1097, 1100 [249 Cal.Rptr. 264].) Inasmuch as the facts here are undisputed the sole issue presented, both in the trial court and on appeal, is one of law. ■ In reviewing a grant of summary judgment when the issue on appeal is one of law, the appellate court is not bound by the trial court's determination but is free to draw its own conclusions of law from the undisputed facts. (*Milo Equipment Corp.* v. *Elsinore Valley Mun. Water Dist.* (1988) 205 Cal.App.3d 1282, 1285 [253 Cal.Rptr. 126]; *Cox Cable San Diego, Inc.* v. *City of San Diego* (1987) 188 Cal.App.3d 952, 958 [233 Cal.Rptr. 735].) If the trial court erred in applying the law to the facts the judgment must be reversed. (See *Scroggs* v. *Coast Community College Dist.* (1987) 193 Cal.App.3d 1399, 1401 [239 Cal.Rptr. 916].)

B

■ In determining a question of preemption, "[t]he crucial inquiry is whether the exercise of the state authority 'frustrate[s] effective implementation of [an] Act's processes.' " (*New York Tel. Co.* v. *New York Labor Dept.* (1979) 440 U.S. 519, 550 [59 L.Ed.2d 553, 574, 99 S.Ct. 1328], conc. opn. of Blackmun, J.) "[I]nflexible application of the [preemption] doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." (*Farmer* v. *Carpenters* (1977) 430 U.S. 290, 302 [51 L.Ed.2d 338, 351, 97 S.Ct. 1056].) Courts are reluctant to infer preemption (*Exxon Corp.* v. *Governor of Maryland* (1978) 437 U.S. 117, 132 [57 L.Ed. 91, 104, 98 S.Ct. 2207]) and it is the burden of the party claiming that Congress intended to preempt state law to prove it. (*Ellsworth* v. *Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 548 [208 Cal.Rptr. 874, 691 P.2d 630].) " '. . . It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so. The exercise of federal supremacy is not lightly to be presumed.'

[Citation.]" (*New York Dept. of Social Services* v. *Dublino* (1973) 413 U.S. 405, 413 [37 L.Ed.2d 688, 695, 93 S.Ct. 2507].)

The California FEHA establishes that freedom from job discrimination on specified grounds, including race and physical handicap, is a civil right (Gov. Code, § 12921); it declares that such discrimination is against public policy (*id.*, § 12920) and is an unlawful employment practice (*id.*, § 12940).[3] (*Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 213 [185 Cal.Rptr. 270, 649 P.2d 912].) "The policy that promotes the right to seek and hold employment free of prejudice is fundamental. Job discrimination 'foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance, and substantially and adversely affects the interest of employees, employers, and the public in general.' (§ 12920.) The statute's aim is to provide effective remedies against the evil." (*Id.*, at p. 220; see also *Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 485 [208 Cal.Rptr. 724, 691 P.2d 272].)

■ Congress enacted the RLA in order to promote stability in the railroad industry and to provide for prompt and efficient resolution of labor-management disputes arising out of railroad collective bargaining agreements. (*Lewy* v. *Southern Pacific Transp. Co.* (9th Cir. 1986) 799 F.2d 1281, 1289.) The RLA provides a comprehensive framework for resolution of disputes in the railroad industry. All "disputes between . . . [railroad] employees and . . . carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" are minor disputes. (45 U.S.C. § 153, First (i); *Lewy* v. *Southern Pacific Transp. Co., supra,* 799 F.2d at p. 1289.) A discharge grievance, a minor dispute, is subject to the internal grievance process and if not settled, is submitted to the National Railroad Adjustment Board established under the RLA. (*Andrews* v. *Louisville & Nashville R. Co.* (1972) 406 U.S. 320, 322 [32 L.Ed.2d 95, 98, 92 S.Ct. 1562]; *McAlester* v. *United Air Lines, Inc.* (10th Cir. 1988) 851 F.2d 1249, 1252.)

■ While the RLA remedy for the resolution of minor disputes is "at least in some situations" exclusive (*Andrews, supra,* 406 U.S. at p. 325 [32 L.Ed.2d at p. 100]), the RLA "is not basically a fair employment practice

---

[3] Government Code section 12940 provides: "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: [¶] (a) For an employer, because of the race . . . [or] physical handicap . . . of any person, to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions or privileges of employment. . . ."

act nor has it been utilized as such." (*Norman* v. *Missouri Pacific Railroad* (8th Cir. 1969) 414 F.2d 73, 82.) Accordingly, the RLA does not preclude a court's jurisdiction over claims based on federal civil rights statutes (42 U.S.C. § 1981 et seq.). (*Coppinger* v. *Metro-North Commuter R.R.* (2d Cir. 1988) 861 F.2d 33; *McAlester* v. *United Air Lines, Inc., supra,* 851 F.2d 1249.)

In *Coppinger* v. *Metro-North Commuter R.R., supra,* 861 F.2d 33, the court reasoned that the plaintiff's statutory civil rights claim had an origin legally independent of his contractual right to pursue his grievance under the RLA and thus the arbitration of the grievance did not foreclose his civil rights action. In reaching this conclusion the court relied on the following language in *Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36, 49-50 [39 L.Ed.2d 147, 159, 94 S.Ct. 1011]: " 'In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under [title VII of the Civil Rights Act of 1964], an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be [enforced] in their respectively appropriate forums.' " (*Coppinger, supra,* 861 F.2d at p. 36.) The *Coppinger* court further noted that in *Atchison, T. & S. F. R. Co.* v. *Buell* (1987) 480 U.S. 557 [94 L.Ed.2d 563, 107 S.Ct. 1410], the Supreme Court held that the RLA's binding arbitration provisions did not deprive the district court of jurisdiction to hear an employee's claim against his employer for personal injuries arising under the FELA. The Supreme Court "noted that the RLA did not preempt other federal statutes that provide rights outside the scope of those covered by the RLA. *Buell,* 107 S.Ct. at 1415. Notwithstanding the deference normally accorded the RLA's arbitration system, claimant could maintain a cause of action asserted under the FELA because ' "different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." ' [*Buell,* 480 U.S. at p. 565 [94 L.Ed.2d at p. 573].)" (*Coppinger, supra,* 861 F.2d at p. 37.) *Coppinger* concluded that for the reasons expressed in *Buell* the plaintiff's statutory civil rights claim (42 U.S.C. § 1983) was not foreclosed by his resort to the grievance procedure provided by the RLA. (*Ibid.*)

In *McAlester* v. *United Air Lines, Inc., supra,* 851 F.2d 1249, it was held that the RLA did not preempt a racially discriminatory discharge claim under a federal civil rights statute (42 U.S.C. § 1981). The court observed that the "RLA contains no language which could be remotely construed as

directly repealing § 1981" (p. 1253) and added that it "[could] not conclude that these statutes are irreconcilable or that the RLA covers the subject matter of racial discrimination in contracting or was clearly intended as a substitute for § 1981." (P. 1254.)

While *Coppinger* and *McAlester* admittedly considered the RLA's preemption of federal, not state, statutes securing basic civil rights, there appears to be no reason why the rationale of those cases does not apply equally to California's FEHA. ■ In his employment discrimination action plaintiff asserts a statutory right independent of the contractual right, under the collective bargaining agreement and the RLA, to challenge his dismissal. The RLA does not purport to cover claims of racial discrimination in the dismissal of railroad employees and does not expressly preempt either federal or state statutes proscribing such dismissal.

In *Colorado Comm'n v. Continental* (1963) 372 U.S. 714 [10 L.Ed.2d 84, 83 S.Ct. 1022] the United States Supreme Court held that the RLA does not bar enforcement of Colorado's antidiscrimination law which, like California's FEHA, provides that it is an unfair employment practice for an employer "to refuse to hire, to discharge, to promote or demote, or to discriminate in matters of compensation against, any person otherwise qualified, because of race, creed, color, national origin or ancestry." (372 U.S. at p. 716 [10 L.Ed.2d at p. 87].) The court stated: "There is even less reason to say that Congress, in passing the Railway Labor Act and making certain of its provisions applicable to air carriers, intended to bar States from protecting employees against racial discrimination. No provision in the Act even mentions discrimination in hiring. . . . Nothing in the Railway Labor Act or in our cases suggests that the Act places upon an air carrier a duty to engage only in fair nondiscriminatory hiring practices. The Act has never been used for that purpose, and we cannot hold it bars Colorado's Anti-Discrimination Act." (*Colorado Comm'n, supra,* 372 U.S. at p. 724 [10 L.Ed.2d at p. 91], fn. omitted.)

In *McCall v. Chesapeake & Ohio Ry. Co.* (6th Cir. 1988) 844 F.2d 294 (cert. den. (1988) 488 U.S. 879 [102 L.Ed.2d 166, 109 S.Ct. 196]), for purposes of determining preemption by the RLA a distinction was drawn between a state statute prohibiting racial discrimination and a state statute prohibiting discrimination on account of physical handicap (the Michigan Handicappers' Civil Rights Act). The court determined that while racial discrimination is "conduct that is not by any construction a subject for collective bargaining and arbitration," the state handicappers' act stands on different footing. (*McCall, supra,* 844 F.2d at p. 302.) Said the court: "In the case of a statute barring racial discrimination, the only inquiry made is

whether the motivation for the challenged action was the employee's race. In the case of the Handicappers' Act, the inquiry must go further: once it is established that the challenged action was taken on account of the employee's physical condition, it must also be determined that the employee's physical condition is unrelated to job performance. It is the necessity of the second level of inquiry which leads to our conclusion that the state claim is preempted in this case. The parties in this case committed the determination of whether a particular physical condition affects an individual's ability to perform the duties of an engineer or fireman to the arbitration process. [Citation.] The inquiry made by the arbitration board—whether McCall's insulin-requiring diabetic condition allows him to perform the duties of an engineer or fireman—is the same factual inquiry made by the jury in McCall's Handicappers' Act suit. . . . [¶] . . . There is not merely a risk of infringement on an area of primary federal concern in this case, there is a direct conflict. Therefore, the state claim is preempted." (*Id.,* at pp. 302-303; but see *Muncy* v. *Norfolk and Western Ry. Co.* (S.D.W.Va. 1986) 650 F.Supp. 641.)

Unlike the situation in *McCall,* plaintiff was not discharged because his physical handicap rendered him unfit to perform the duties of his job, but because he was found to have violated rule G. However, the distinction is irrelevant for purposes of determining the RLA's preemption of a state cause of action. Inherent in the present action is a claim that plaintiff's alleged handicap did not prevent performance of the duties of his job. If an employee's lack of fitness to perform his job is made arbitrable under the parties' collective bargaining agreement, the present action is preempted insofar as it alleges discrimination based on physical handicap because it raises an issue determinable solely under procedures established by the RLA. ██ "[W]hen an arbitration board established pursuant to [the RLA] is required by the collective bargaining agreement to make the same factual inquiry regarding physical ability to perform a job as would be made under the state act, the federal dispute resolution process is the sole remedy." (*McCall* v. *Chesapeake & Ohio Ry. Co., supra,* 844 F.2d 294, 303.)

The principle of preemption by the RLA of matters governed by a collective bargaining agreement was applied in *DeTomaso* v. *Pan American World Airways, Inc.* (1987) 43 Cal.3d 517 [235 Cal.Rptr. 292, 733 P.2d 614]. There, an airline employee discharged for "fraud, dishonesty and abuse of company policy" sued his former employer for damages for defamation and negligent and intentional infliction of emotional distress which were committed during the employer's investigation of the charges against the employee and the discharge procedures mandated by the collective bargaining agreement. The Supreme Court held the employee's claims for defamation and infliction of emotional distress were preempted by the RLA stating:

"RLA preemption must . . . extend to any claim premised on facts inextricably intertwined with matters subject to the grievance procedures of the collective bargaining agreement. To adjudicate such issues would necessarily involve interpretation of the agreement, which a court is without jurisdiction to do." (*DeTomaso, supra,* 43 Cal.3d at p. 529.)

In *DeTomaso* the Supreme Court cited *Stephens* v. *Norfolk and W. Ry. Co.* (6th Cir. 1986) 792 F.2d 576 (mod. 811 F.2d 286) as an example of an action preempted by the RLA because the conduct underlying the action was " 'arguably governed by' or has a 'not obviously insubstantial relationship to' the collective bargaining agreement." (*DeTomaso* v. *Pan American World Airways, Inc., supra,* 43 Cal.3d at pp. 527-528.) In *Stephens* it was held that the RLA preempted an action for violation of a state statute prohibiting discrimination based on a physical handicap unrelated to the worker's ability to perform the duties of his job. The court noted that the collective bargaining agreement covered aspects of the work relationship including defendant employer's prerogative for setting physical qualifications for employees, and that defendant legitimately exercised rights granted by the collective bargaining agreement in disqualifying plaintiff. "Any disagreement with [defendant's] decision necessarily implies interpretation and application of the collective bargaining agreement. Consequently, [plaintiff's] complaint constitutes a minor dispute subject to primary and exclusive jurisdiction of the NRAB. [Plaintiff] availed himself of the contractual grievance procedures culminating in a hearing before Public Law Board No. 912. His current civil rights allegations present a matrix of facts 'inextricably intertwined' with the contract grievance proceeding and the RLA." (*Stephens* v. *Norfolk and W. Ry. Co., supra,* 792 F.2d at p. 581.)

■ The same cannot be said in the present case. In support of its motion for summary judgment defendant submitted portions of the collective bargaining agreement between defendant and plaintiff's union. Those portions did not mention an employee's lack of physical fitness to perform his job as a ground for his discharge, much less commit to the arbitration process the determination of whether a particular physical condition affects an individual's ability to perform the duties of his job. ■ A party moving for summary judgment bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory and that the moving party is entitled to judgment as a matter of law. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134]; *Jones* v. *Los Angeles Community College Dist.* (1988) 198 Cal.App.3d 794, 812-813 [244 Cal.Rptr. 37].) ■ Defendant did not sustain that burden inasmuch as the papers it submitted failed to establish that plaintiff's cause of action for employment discrimina-

tion based on physical handicap is "inextricably intertwined" with matters subject to the contractual grievance procedure set forth in the collective bargaining agreement.

The RLA does not preempt plaintiff's action for employment discrimination on the ground of either race or physical handicap. Accordingly, the summary judgment entered in that action must be reversed.

## II

### APPEAL FROM ORDER DENYING MOTION TO TAX COSTS

Because the award of costs to defendant was incident to the judgment, reversal of the judgment operates to vacate the award. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 625, p. 607.) Accordingly, plaintiff's appeal from the order denying his motion to tax costs is moot and the appeal therefrom must be dismissed.

### DISPOSITION

The judgment is reversed. The appeal from the order denying plaintiff's motion to tax costs is dismissed. Costs on appeal are awarded to plaintiff.

Johnson, J., concurred.

**WOODS (Fred), J.**—I concur in the judgment under the compulsion of *Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36 [39 L.Ed.2d 147, 94 S.Ct. 1011], *Colorado Comm'n* v. *Continental* (1963) 372 U.S. 714 [10 L.Ed.2d 84, 83 S.Ct. 1022] and *Coppinger* v. *Metro-North Commuter R.R.* (2d Cir. 1988) 861 F.2d 33.

I respectfully express concern with existing law in that the arbitration process provided for under the Railway Labor Act of 1926 and as amended in 1934 is rendered virtually transitory in cases of mixed or nongeneric discrimination claims like the one in this instance. Under existing law, an employee who is fired for cause and loses the arbitration of his grievance dispute under the Railway Labor Act, can thumb his nose at the award, at the doctrines of collateral estoppel and res judicata, and proceed de novo not only on his "termination for cause" decision, but on an independent action in the state court based upon a claim of discrimination, whether or not he deigned it appropriate to submit his discrimination claim to the arbitration process.

Prompt relief intended to be provided for by the arbitration provisions of the Railway Labor Act, under such a state of affairs, is transitory indeed.

Respondent's petition for review by the Supreme Court was denied November 30, 1989.