901 F.2d 13
 5 Indiv.Empl.Rts.Cas. 518
 Richard MOLINELLI, Plaintiff-Appellee,
v.
Edward V. TUCKER, Acting Superintendent of Sing Sing
Correctional Facility individually and in his official
capacity, Enoc Esteves, Deputy Superintendent of Security of
the Sing Sing Correctional Facility, individually and in his
official capacity, John Duffany, Captain of Security of the
Sing Sing Correctional Facility, individually and in his
official capacity, Edward Holmes, Sergeant of Security and
Supervisor of "7 Building" of the Sing Sing Correctional
Facility, individually and in his official capacity, Michael
Stokes, Lieutenant of Security of the Sing Sing Correctional
Facility, individually and in his official capacity, Frank
DeGinnero, Lieutenant of Security of the Sing Sing
Correctional Facility, Paul Annette, Lieutenant of Security
of the Sing Sing Correctional Facility, individually and in
his official capacity, William Vega, Correctional Officer of
Security of the Sing Sing Correctional Facility,
individually and in his official capacity, Defendants-Appellants.
 No. 519, Docket 89-7569.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 6, 1989.
Decided April 9, 1990.
 
 Jane A. Levine, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for plaintiff-appellee.
 Marilyn T. Trautfield, Asst. Atty. Gen. State of N.Y., New York City (Robert Abrams, Atty. Gen. State of N.Y., Ellen J. Fried, Asst. Atty. Gen. State of N.Y., of counsel), for defendants-appellants.
 Before LUMBARD, NEWMAN, and WINTER, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 The question on appeal of this civil rights action is whether, at the time of a 1986 urinalysis of a state prison guard, the law "clearly established" that urine testing was a search under the fourth amendment, making the defense of qualified immunity unavailable to the prison officials administering such tests unreasonably. We hold that the law in 1986 was not "clearly established" and that the defense is available.
 
 I.
 
 2
 Edward Tucker, acting superintendent of Sing Sing Correctional Facility, and other Sing Sing officials, appeal the order of the District Court for the Southern District of New York, Leonard B. Sand, Judge, denying their motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.
 
 
 3
 Plaintiff-appellee Molinelli, a Sing Sing corrections officer, filed his pro se complaint under 42 U.S.C. Sec. 1983 (1982) on July 10, 1987, alleging that his rights under the fourth and fourteenth amendments were violated by an October 1986 urinalysis administered by prison officials. Defendants-appellants filed a motion to dismiss or for summary judgment. The court then appointed a pro bono counsel to represent Molinelli, and he moved to amend his complaint and for summary judgment based on the proposed amended complaint. Defendants moved again to dismiss, arguing that the eleventh amendment was an absolute bar to relief and, in the alternative, raising the defense of qualified immunity. Judge Sand granted Molinelli's motion to amend the complaint, denied the motion to dismiss, and denied both motions for summary judgment.
 
 
 4
 Molinelli filed the amended complaint in December 1988, asserting claims under Section 1983 and the New York Constitution and seeking damages, an injunction, a declaratory judgment, and other relief. Defendants moved to dismiss on the grounds of the eleventh amendment and qualified immunity. In May 1989, Judge Sand denied the motion. On the eleventh amendment issue, he stated that the suit could proceed because the defendants had been sued in their individual capacities. The court also rejected the qualified immunity defense, noting, based on testing procedures deemed analogous to urinalysis, that the law was clearly established in October 1986 that the defendants' conduct was subject to fourth amendment constraints.
 
 
 5
 The order denying dismissal on the ground of qualified immunity is immediately appealable since its disposition requires no adjudication of facts. See Mitchell v. Forsyth, 472 U.S. 511, 524-30, 105 S.Ct. 2806, 2814-18, 86 L.Ed.2d 411 (1985); Neu v. Corcoran, 869 F.2d 662, 664-65 (2d Cir.1989). We reverse and remand with instructions to enter an order dismissing the complaint.
 
 II.
 
 6
 Because this appeal is taken from the denial of a Rule 12(b)(6) motion to dismiss, we accept the factual allegations in the complaint as true. Frazier v. Coughlin, 850 F.2d 129 (2d Cir.1988).
 
 
 7
 On October 9, 1986, two officers from New York's Department of Correctional Services (DOCS), accompanied by trained dogs, detected two hypodermic needles in the basement of an inmate housing unit at Sing Sing and one needle inside one of the basement lockers. Correction Officer William Vega initially identified an inmate as the person to whom the locker was assigned and took him into custody. Later, Vega changed his mind, released the inmate, and informed Enoc Esteves, the deputy superintendent of security, that the locker was used by correction officers on the 3 to 11 shift. At the time, Molinelli worked that shift.
 
 
 8
 Before Esteves or other supervisory officers investigated Vega's information, Vega recanted a second time and stated that the locker was unassigned. Despite this, Esteves and others, all of whom were aware of the recantation, decided collectively to require Molinelli to undergo a urinalysis. Other than the discovery of the needles, no evidence suggested in any way that Molinelli used illegal drugs.
 
 
 9
 When Molinelli arrived for work at about 2:30 p.m. that day, he was ordered, in the presence of inmates, to surrender his shift to another officer and walk, prisoner-style, to Esteves's office. Many of Molinelli's colleagues and several inmates witnessed this. Inside the office, Molinelli was informed that he would have to take a urine test. Although he denied the charges and offered to accompany the officers to his actual locker, Molinelli was told that if he refused the test he would be considered guilty of the charges, ordered to leave the facility, and subjected to formal proceedings. Molinelli was escorted to a bathroom, and with the door open, forced to urinate into a small bottle under the close observation of Lt. Michael Stokes. Stokes delivered the specimen to an employee of National Health Laboratory (NHL).
 
 
 10
 The next day, Molinelli underwent an independent urinalysis, apparently of his own volition. (The complaint is unclear on this point.) The results were negative.
 
 
 11
 Four months later, on February 9, 1987, Molinelli received a memorandum from Esteves stating that his urine sample was "lost by the NHL" before it could be tested. But after this litigation had begun, Molinelli obtained a copy of an NHL document dated October 11, 1986--two days after the first urine sample was taken--stating that no drugs were detected in his sample. Molinelli alleges that this document was delivered to DOCS within several days of October 11, that it was deliberately withheld, and that Esteves deliberately misrepresented its contents.
 
 III.
 
 12
 We address here only the district court's ruling on the qualified immunity defense. As we recently described the defense, "Prison officials may be protected from personal liability under Sec. 1983 when their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Fox v. Coughlin, 893 F.2d 475, 477 (2d Cir.1990) (per curiam) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). To gain the protection of qualified immunity, appellants in the instant case must show that in October 1986, when the urinalysis was administered, the fourth amendment status of urine testing was sufficiently unsettled that it was unclear whether the test implicated Molinelli's rights. See Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987); Fox, 893 F.2d at 477; Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir.1989).
 
 
 13
 The right the government official is alleged to have violated is "clearly established," and hence beyond any qualified immunity, when the "contours" of the right are sufficiently unambiguous so that a reasonable official knows that what he is doing violates that right. Anderson, 483 U.S. at 640, 107 S.Ct. at 3039. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (citations omitted). A finding of apparent unlawfulness does not require that an earlier decision of this court be directly on point with the current facts; however, the absence of such a decision militates against that finding when, in addition, there have been no cases in this Circuit "foreshadow[ing]" a ruling on the issue, nor many cases in other circuits taking a certain stand. Shabazz v. Coughlin, 852 F.2d 697, 701 (2d Cir.1988).
 
 
 14
 The district court concluded that the law was not unsettled in October 1986, making the defense unavailable. It found persuasive Molinelli's assertion that no case had at that time held that urinalysis was not a fourth amendment search, and it analogized urinalysis to other bodily investigatory practices, such as blood, hair, breath and handwriting samples, that had been held subject to fourth amendment constraints.
 
 
 15
 In defense of the court's conclusion, Molinelli points to one 1984 case from the District Court for the Southern District of New York, Storms v. Coughlin, 600 F.Supp. 1214 (S.D.N.Y.1984), and a handful of pre-1986 cases from jurisdictions outside this Circuit, holding that urinalysis constituted a search. Appellants counter with academic commentary from 1986 concluding that courts were just then beginning to grapple with the fourth amendment implications of urinalysis. They also cite our holding in Coppinger v. Metro-North Commuter R.R., 861 F.2d 33 (2d Cir.1988), and passages from two recent Southern District cases, Burka v. New York City Transit Auth., 680 F.Supp. 590, 603 (S.D.N.Y.1988) and Fowler v. New York City Dept. of Sanitation, 704 F.Supp. 1264, 1273 (S.D.N.Y.1989), all of which, they argue, express uncertainty as to the state of the law on this issue. The Supreme Court resolved this issue in 1989, holding that urinalysis is a search under the fourth amendment, see Skinner v. Railway Labor Executives' Ass'n, --- U.S. ----, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).
 
 
 16
 It is clear from this conflict of opinion, especially the decisions within this Circuit, that there was no unequivocal holding in 1986, or even until Skinner in 1989, that urinalysis is a fourth amendment search. In Coppinger, a case decided in 1988, we assumed, but did not hold directly, that urinalysis triggers fourth amendment protections, even though we noted that "[a] number of our sister circuits have held that compulsory urinalysis of public employees qualifies as a 'search and seizure'...." 861 F.2d at 35 (citing cases).[1] We did not, however, cite any previous authority supporting the proposition Molinelli now advances. Judge Haight did conclude in Storms, in 1984, that "urinalysis [is] analogous to a blood search," 600 F.Supp. at 1218, but he stated earlier in the same opinion that the parties had agreed that urinalysis implicates the fourth amendment--making his later statement dicta. And both Judge Goettel in Burka and Judge Mukasey in Fowler apparently considered the law sufficiently unsettled--even two and three years, respectively, after 1986--to give weight in their analyses to a variety of cases from other jurisdictions, state and federal. Judge Goettel went so far as to state that he did "not view the current state of Federal law on this question to be so settled as to make summary judgment ... [or] dismissal, appropriate at this stage." 680 F.Supp. at 605.
 
 
 17
 Molinelli seeks to distinguish these cases, and to rely on Storms, but his effort seems ultimately to concede appellants' point: The law was not in a state of certainty in 1986, else the distinguishing of the recent district court cases and relying on another district judge's dicta would be unnecessary. Further, the district court's analogy to other forms of testing is not the sort of definitive authority on which the prison officials reasonably can be expected to have relied in 1986. The additional basis of the court's ruling--the absence of any decision in 1986 holding that urinalysis was not a search--is likewise unpersuasive. Even assuming that the court's reading of the cases was correct, it is surely illogical to conclude that the law in an area as perplexing as this was "clearly established" by judicial non-holdings.
 
 IV.
 
 18
 In sum, we find that the fourth amendment status of urine testing of public employees was not "clearly established" in October 1986 and that prison officials requiring such tests at that time are therefore entitled to the protection of the qualified immunity defense. Accordingly, we remand to the district court for entry of an order dismissing Molinelli's complaint. Molinelli's state constitutional claim should be likewise dismissed. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).
 
 
 19
 Reversed and remanded.
 
 
 
 [1]
 Only one of the cases we cited for that proposition in Coppinger was decided before 1986. See Division 241, Amalgamated Transit Union v. Suscy, 538 F.2d 1264 (7th Cir.), cert. denied, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976)