TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 90-934 |
| of | : | |
| | : | JUNE 6, 1991 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE ED DAVIS, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following questions.

1. Where a city or county has elected pursuant to Government Code section 66499 to accept a surety bond to secure the faithful performance of an act or agreement of a subdivider (such as the construction of necessary public improvements), does the city or county have absolute discretion to accept or reject a tendered bond?

2. If the answer to question one is in the affirmative, may a city or county establish financial size criteria for insurers with respect to performance bonds? If so may it adopt as its financial size criteria that established by a nongovernmental insurance rating service or that established by the federal government prepared by the United States Treasury Department as acceptable security on federal contracts?

3. May a city or county adopt a policy of not accepting performance bonds from a particular insurer where that insurer has resisted payment on an outstanding claim in favor of that local agency without provision for inquiry into the reasons it resisted payment?

4. Does the holding in *Milo Equipment Corp.* v. *Elsinore Valley Municipal Water District* (1988) 205 Cal.App.3d 1282 apply to performance bonds filed under the provisions of Government Code section 66499?

CONCLUSIONS

1. Where a city or county has elected pursuant to Government Code section 66499 to accept a surety bond to secure the faithful performance of an act or agreement of a subdivider (such as the construction of necessary public improvements), a city or county has discretion to determine whether to accept or reject a tendered bond absent fraud, arbitrary action or a clear abuse of discretion.

2.  In determining whether to accept or reject surety bonds tendered pursuant Government Code section 66499 a city or county may adopt financial size criteria for insurers with respect to performance bonds.  In doing so it may adopt financial size criteria established by a nongovernmental insurance rating service or that established by the federal government prepared by the United States Treasury Department as acceptable sureties on federal contracts.

3. A city or county may not adopt a policy of not accepting performance bonds from a particular insurer on the basis that the insurer has resisted payment on an outstanding claim in favor of the local agency.

4. The broad holding in *Milo Equipment Corp.* v. *Elsinore Valley Municipal Water District* (1988) 205 Cal.App.3d 1282, that the Bond and Undertaking Law is applicable to all bonds given as security pursuant to any state statute, is applicable to bonds filed under the provisions of Government Code section 66499 except to the extent the statute is inconsistent therewith.

ANALYSIS

The Insurance Code provides a comprehensive scheme for admitting insurance companies to do business in California ("admitted insurers"), for their regulation, and for the licensing of insurance brokers, sales persons and other insurance professionals.

Accordingly, no "person" (normally a corporation, Ins. Code, § 699) may "transact any class of insurance business in this state without first being admitted for that class . . . by procuring a certificate of authority from the commissioner [of Insurance]".  (Ins. Code, § 700.) "Prior to admission each insurer shall file with the commissioner a certified copy of its last annual statement or a verified statement exhibiting its conditions and affairs." (Ins. Code, § 706.)  "The commissioner . . . may deny such certificate whenever, in his judgment, the investments of such insurer are not so made as to make available within a reasonable time sufficient monies to meet properly any demand. . . made against the insurer."  (Ins. Code, § 706.5.)

For the first three years it is in business an "admitted insurer" must maintain or have maintained certain minimum capital and surplus requirements either in cash or in specified securities.  (Ins. Code, §§ 1153, 1153.5.)  The Insurance Commissioner may suspend or terminate the certificate of authority of an "admitted insurer" on various grounds such as conducting its business fraudulently, not carrying out its contracts in good faith, or as a matter of practice compelling claimants to resort to litigation to secure payments.  (Ins. Code, § 704.)  The commissioner may also when necessary take possession of an insurer's assets as conservator and even apply to the court for an order liquidating the company.  (Ins. Code, § 1013 et seq.)

One "class" of insurance is "surety insurance" which is the focus of this opinion. (Ins. Code, §§ 100(5), 105.).  With respect to that form of insurance, section 12090 of the Insurance Code provides:

> "An admitted surety insurer shall not become surety on any one undertaking, or accept reinsurance on such undertaking, when its liability thereon, in excess of the amount reinsured by it in an admitted insurer, amounts to more than 10 percent of its capital and surplus as shown by its last statement on file in the office of the commissioner."

The questions presented for resolution herein arise in the context of the subdivision Map Act, Government Code section 66410 et seq.  That act generally provides for the "[r]egulation and control of the design and improvement of subdivisions" by the legislative body of cities and

counties. (Gov. Code, § 66411.) In granting approval for subdivisions, cities and counties may require agreements from subdividers to construct necessary public improvements for the subdivision. (See Gov. Code, §§ 66419, 66420, 66421, 66462.) To secure the performance of subdividers' agreements, section 66499 of the Government Code states:

"(a) Whenever this division or a local ordinance authorizes or requires the furnishing of security in connection with the performance of any act or agreement, if the developer is not a nonprofit corporation described in subdivision (c) of Section 66499.3, the security shall be one of the following at the option of and subject to the approval of the local agency and if the developer is a nonprofit corporation described in subdivision (c) of Section 66499.3, the security shall be one of the following, subject to the approval of the local agency.:

(1) Bond or bonds by one or more duly authorized corporate sureties.

"(2) A deposit, either with the local agency or a responsible escrow agent or trust company, at the option of the local agency, of money or negotiable bonds of the kind approved for securing deposits of public moneys.

"(3) An instrument of credit from an agency of the state, federal, or local government when any agency of the State, federal, or local government provides at least 20 percent of the financing for the portion of the act or agreement requiring security, or from one or more financial institutions subject to regulation by the state or federal government and pledging that the funds necessary to carry out the act or agreement are on deposit and guaranteed for payment, or a letter of credit issued by such a financial institution.

"(4) A lien upon the property to be divided, created by contract between the owner and the local agency, if the local agency finds that it would not be in the public interest to require the installation of the required improvement sooner than two years after the recordation of the map.

"(5) Any form of security, including security interests in real property, which is acceptable to the local agency and specified by ordinance thereof. . . ." (Emphasis added.)

Thus, to secure performance of a subdivision agreement five types of securities are legally permissible. As to most subdividers, the type of security is both (1) "at the option of and" (2) "subject to the approval of the local agency", that is, the city or county. If the subdivider is a nonprofit corporation, then the subdivider itself may choose the form of the security, but the security is still "subject to the approval of the local agency."

1. Where the City or County Has Elected To Accept A Surety Bond

The first question presented assumes that a city or county has elected to accept a surety bond pursuant to section 66499 of the Government Code ("section 66499"). We are then asked whether a city or county has absolute discretion to accept or reject a tendered bond.

We initially note the suggestion that the Insurance Code provisions granting "admitted insurers" the right to do business in California and regulating their admission and conduct (as outlined above) "preempts" local regulation of "admitted insurers"; that, accordingly, a city or county lacks the authority to reject a surety bond issued by any "admitted insurer."

Under the doctrine of "preemption," a local law or regulation which enters a field which is fully occupied by general law, either expressly or by legislative implication, is void since there is no room for supplementary or complementary local regulation. (See, e.g., *Berkenfeld* v. *City or Berkeley* (1976) 17 Cal.3d 129, 140-141; *Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807-808; *Carl* v. *City of Los Angeles* (1976) 61 Cal.App.3d 265, 269.)

We would concede that a city or county could not prohibit an "admitted insurer" from doing business within its jurisdiction under the doctrine of "preemption" (See, e.g., *Agnew* v. *City of Los Angeles* (1958) 51 Cal.2d 1, Bus. & Prof. Code preempts field of regulating state licensed contractors.) However, we are not presented with such a situation herein. Nothing in the questions presented states that the city or county is attempting to prohibit any "admitted insurer" from doing business within the city or county, or is even attempting to regulate their doing business within the jurisdiction. The facts we are presented with are that the city or county, in conducting its own governmental affairs, may refuse to do business with particular "admitted insurers." In short, we are not presented with a "preemption" question, but the question of a city or county's authority under section 66499 to "approve" sureties selected by developers where the city or county will be the beneficiary of the undertaking.

Furthermore, in response to the general argument that the Insurance Code provisions should prevail over the Government Code provisions we point out the following. Subdivision (a)(1) of section 66499 states that the security shall be a "[b]ond or bonds by one or more <u>duly authorized</u> corporate sureties." (Emphasis added.) The Legislature required that the sureties be issued by "admitted insurers" as a precondition to the exercise of discretion by the local agency. Thus, the Insurance Code "licensing" was not intended to be exclusive. Approval by the local agency was clearly intended to be in addition to "licensing."

Returning to the wording of section 66499, we see that the security for performance of the subdivider's agreement is "subject to the approval of the local agency" whether a subdivider is or is not a nonprofit corporation. The wording is clear and unambiguous. The Legislature has vested the city or county with discretion to approve <u>or reject</u> the security.

However, even where a law "vests an agency with unlimited discretion, or power to exercise a judgment of high order [that fact] does not confer unrestricted power." (*Cerini* v. *City of Cloverdale* (1987) 191 Cal.App.3d 1471, 1479-1480.) For a court, however, to interfere, it would have to be demonstrated that there was "convincing evidence of fraud, arbitrary action or an abuse of discretion." (*Superior Bedding Co.* v. *Erensberg* (1961) 193 Cal.App.2d 86, 91.)

As stated by one leading authority:

". . . Where a municipal board is authorized to do a particular act in its discretion, the courts will not control that discretion unless manifestly abused, nor inquire into the propriety, economy and general wisdom of the undertaking, or into the details of the manner adopted to carry the matter into execution. A court cannot substitute its judgment for that of the municipal authorities if there is room for debate . . . ." (2 McQuillin Mun. Corp. § 10.33 (3rd Ed. 1988 Rev. Vol.), footnotes omitted.)

Accordingly, in response to question one, where a city or county has elected pursuant to section 66499 to accept a surety bond to secure the faithful performance of an act or agreement of a subdivider (such as the construction of necessary public improvements), a city or county has discretion to determine whether to accept or reject a tendered bond absent fraud, arbitrary action or a clear abuse of discretion.

### 2. Adoption of Financial Size Criteria

The second question presented is (1) whether a city or county may establish financial size criteria for insurers with respect to performance bonds submitted pursuant to section 66499 and if so (2) whether it may adopt financial size criteria established by a nongovernmental insurance rating service or that established by the federal government prepared by the United States Treasury Department as acceptable securities on federal contracts.

As to the first portion of the question, we believe it would fall within the discretion of a city or county to establish financial size criteria for surety companies. The fact that an admitted insured is essentially "licensed" by the state, that is, has been granted a certificate of authority and is regulated by statute is no guarantee that it will necessarily be able to meet its commitments on a performance bond at some time in the distant future should a subdivider default on his agreement. The fact that the Legislature has given cities and counties the clear authority to approve or reject performance bonds would seem to lead to the inevitable conclusion that this discretion can be exercised with respect to financial criteria. The sole purpose of the surety bond is to ensure that the city or county will be financially protected should the subdivider default in his agreement.

With respect to a city or county adopting financial criteria established either by a nongovernmental agency or the federal government, we believe a court would uphold such a policy. A city or county does not necessarily have either the time nor the expertise to investigate each surety. It would appear to be reasonable to rely upon those who have such time and such expertise, assuming that the local agency can show, if challenged, that the choice of a rating service was a reasonable exercise of discretion. [1] Such a showing could be made, for example, by demonstrating that the service is generally accepted in the relevant financial community for uses relevant to this purpose.

### 3. Policy As To Insurer Who Has Resisted Payment

The third question is whether a city or county may adopt a policy of not accepting performance bonds from a particular insurer where that insurer has resisted payment on an outstanding claim in favor of that local agency without provision for inquiry into the reasons it resisted payment.

In response to question one we concluded that the discretion a city or county has in approving or rejecting a surety under section 66499 has some limits. These are that the local agency may not be guilty of fraud, arbitrary action or a clear abuse of discretion. (*Superior Bedding Co.* v. *Erensberg, supra*, 193 Cal.App.2d 86, 91.)

In our view, a policy of rejecting an insurer merely because that insurer has resisted payment on an outstanding claim on a prior occasion would not pass judicial muster. We believe

---

[1] In so concluding, we would point out that we are not dealing with the situation where a city or county is, by legislative act, incorporating by reference both present and future criteria of another agency which might make it subject to constitutional objection. (See discussion in 63 Ops.Cal.Atty.Gen. 566 (1980).)

a court would find such a policy to be "arbitrary action" on the part of the city or county. It may very well be that the insurer had a legitimate legal reason for having rejected payment. The insurer should not be "punished" for exercising its contractual rights. Additionally, there may be other mitigating circumstances of a persuasive nature which should be considered.

We conclude a local agency must evaluate the basis for a refusal to pay. It could of course require an explanation or justification. The local agency would be justified in rejecting a surety if it concluded the refusal was not reasonable. However, if the local agency determined the refusal was reasonable, rejection of the surety on that basis would be arbitrary.

### 4. *Milo Equipment Corp.* v. *Elsinore Valley Municipal Water District*

The final question presented is whether the holding in *Milo Equipment Corp.* v. *Elsinore Valley Municipal Water District* (1988) 205 Cal.App.3d 1282 applies to performance bonds filed under the provisions of section 66499.

The narrower holding of that case is not germane herein. That holding is that stop notice release bonds, dealt with specifically under section 3196 of the Civil Code, are also subject to the Bond and Undertaking Law, a comprehensive enactment found in section 995.010 et seq. of the Code of Civil Procedure.

The broader holding of the case would, however, be applicable. That holding is that the Bond and Undertaking Law, the comprehensive law which regulates surety bonds, is not restricted to bonds filed in court proceedings, but is, as stated in that law itself, applicable "to a bond or undertaking executed, filed, posted, furnished, or otherwise given as security pursuant to any statute of this State, <u>except to the extent the statute prescribes a different rule or is inconsistent</u>. . . ." (Code of Civ. Proc. § 995.020, subd. (a), emphasis added.)

Since no specific facts have been presented to us, we conclude only that the act is applicable to bonds submitted pursuant to section 66499 "except to the extent . . . [§ 66499] prescribes a different rule or is inconsistent" with the act.[2]

\* \* \* \*

---

[2]A perusal of the act and section 66499 discloses one possible inconsistency. Section 66499 permits a city or county to accept <u>at its option</u> a surety bond, or deposits of money, or certain securities.

The Bond and Undertaking Law, however, permits deposits of money or certain securities in lieu of a surety bond, unless precluded by the particular statute providing for the undertaking.

It would be logical to conclude that section 66499 precludes deposits of money or deposits of securities where the city or county opts for a surety bond.