**634**

Raul SOTO, Plaintiff,

v.

Thomas COUGHLIN, III, Commissioner; Stephen Dalsheim, Superintendent of Downstate Correctional Facility; and Gordon Lord, Program Coordinator of Downstate Correctional Facility, Defendants.

No. 86 Civ. 1916 (EW).

United States District Court,
S.D. New York.

Aug. 20, 1987.

Hughes Hubbard & Reed, New York City, for plaintiff; Daniel H. Weiner, of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendants; Charles C. Davis, Jr., of counsel.

EDWARD WEINFELD, District Judge.

The plaintiff, Raul Soto, filed this complaint under 42 U.S.C. § 1983, against employees of the New York State Correctional Department, alleging that the defendants violated his constitutional right to due process. The complaint alleges that in March 1985, Soto, then an inmate at the Downstate Correctional Facility, Fishkill, New York, was found guilty in a disciplinary proceeding of violation of prison regulations relating to the use of narcotics by inmates. A positive urinalysis following plaintiff's return from a temporary furlough allegedly was deemed sufficient evidence of the illicit use of marijuana to warrant imposition of disciplinary actions. Plaintiff was penalized sixty (60) days confinement in a special housing unit and loss of privileges, and, subsequently, transferred to the Clinton Correctional Facility, which is 275 to 300 miles from New York City. The plaintiff further alleges that the transfer to the Clinton facility deprived him of $4,500., in wages he would have received for his participation in a work release program, for which he asserts he was qualified. He also alleges that the transfer to the Clinton Correctional Facility, and its distance from where the members of his family resided, deprived him of the commu-

nity of his family. Plaintiff asks that this Court void the guilty determination of the Downstate disciplinary proceeding, expunge the determination from plaintiff's prison records, and award monetary damages.

The defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The defendants claim that they are entitled to qualified immunity from suit for the conduct alleged in the complaint on the ground that the alleged conduct did not, at the time it occurred, violate clearly established law, and that qualified immunity requires judgment in their favor on the pleadings before this Court. Plaintiff responds that qualified immunity does not, in this case, support judgment on the pleadings.[1]

## BACKGROUND

The complaint alleges that the plaintiff's urinalysis test was taken in a manner that did not conform to the State's regulations. The test used in this case was the EMIT test, for which use guidelines were promulgated by the Department of Correctional Services on December 1, 1983. Department of Correctional Services' Directive 4937 states that clear chain of custody for urinalysis samples is to be implemented, and, when the test is performed in the correctional facility, that a positive test result must be confirmed by a second EMIT test. If the test is performed by an outside laboratory, as was the case in the instant situation, the directive states that all persons handling the specimen should make a notation on the "Request for Urinalysis Test" form; the specimen is then forwarded to the outside facility in accordance with procedures of that outside facility. A "Misbehavior Report," accompanied by the facility's report, and a copy of its methods and procedures, is filed if there is a positive result. The complaint alleges that defendants ignored these regulations in handling plaintiff's urine sample. Specifically, the complaint states that a proper chain of custody was not maintained between the time that the specimen was collected from Soto and the time that it was delivered to the outside laboratory. For the purpose of this motion, plaintiff's allegations are accepted as true.[2]

## DISCUSSION

■ As a preliminary matter, judgment on the pleadings is appropriate as regards the damages action against defendants Coughlin and Dalsheim. The complaint does not allege that either of these defendants was personally involved in the alleged deprivation of plaintiff's due process rights.[3] Defendant Lord, whom the complaint alleges personally took part in the actions of which plaintiff complains, asserts that he is entitled to judgment based upon the doctrine of qualified immunity. Qualified immunity as a defense to damage actions is available to officials performing discretionary functions if their conduct was objectively legally reasonable.[4]

■ A liberty interest is at stake when prisoners are reclassified for punitive reasons.[5] Procedural due process protections are required before a prisoner may be deprived of his good time and other benefits, though the protections may have to be accommodated to the distinctive setting of prison.[6] The failure of prison officials to

---

1. In the briefs presented to this Court, both plaintiff's and defendants' counsel raise a fourth amendment issue. No such cause of action exists, however, within the four corners of the complaint before this Court.

2. *See, e.g., Hospital Building Co. v. Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976).

3. *See, e.g., Sommer v. Dixon,* 709 F.2d 173, 174 (2d Cir.1983) (per curiam), *cert. denied* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1984).

4. *See Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

5. *See* Superintendent, Massachusetts Correctional Institution at *Walpole v. Hill,* 472 U.S. 445, 453–54, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985).

6. *See Id.* (deciding that when a liberty interest is at stake, a prison disciplinary board must comply with minimum due process requirements, which are flexible and depend on a balancing of the interests affected by the government action).

follow their own rules may be a violation of due process actionable under § 1983,[7] if the procedures followed in the hearing do not comport with the due process standards applicable.[8] The plaintiff charges that the disciplinary action taken against him was based upon no evidence because the positive urinalysis allegedly was obtained in violation of prison regulations and the hearing officers disregarded or failed to receive the evidence of two guards who could have testified that plaintiff was not under the influence of a narcotic when he returned from his furlough. Thus, The plaintiff argues that the disciplinary determination, allegedly based upon insufficient evidence, violated his due process rights to a decision supported by a modicum of evidence.[9] In *Robison v. Via,* [10] our Court of Appeals held that, even if the defendant State officials had violated State law, summary judgment was warranted on the basis of qualified immunity because due process standards are a matter of federal, rather than State, law. In that case, the plaintiff alleged, in part, that the defendants had deprived her of her right to due process by removing her children from her custody without a court order. The Court of Appeals found that "no rational juror could find it not objectively reasonable for [the officials] to believe" that the children were in immediate danger that required protective custody, even absent a court order.[11] The court stated that under federal law, in cases where children were removed from parental control, there was no clearly established violation of due process in "sum-

marily removing children when officials arguably had probable cause for arresting one or both parents for molestation of other children." [12]

■ The summary judgment motion made in *Robison* was based upon depositions taken of the plaintiff and affidavits from the defendants, and the Court of Appeals referred to and relied upon those depositions and affidavits in making its determination. As noted, here the defendants' application is made under Rule 12(c), and plaintiff's averments must be accepted. Thus, whether or not judged by an objective standard of reasonableness, the alleged failure to adhere to the State's administrative regulations governing urinalysis tests cannot be decided upon the face of the pleadings and requires a fact determination. The objective legal reasonableness of defendants' alleged disregard of established procedures is at issue. The factfinder will have to determine if minimum due process was afforded to the plaintiff [13] and, if not, the objective legal reasonableness of the failure to provide what process was due. The Supreme Court recently stated that the operation of the "clearly established" standard for determining the application of qualified immunity depends "substantially upon the level of generality at which the relevant 'legal rule' is to be identified." [14] The objective legal reasonableness of the defendants' actions in allegedly disregarding their established procedures by not maintaining the proper chain

---

**7.** *See Patterson v. Coughlin,* 761 F.2d 886 (2d Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); *Duckett v. Ward,* 458 F.Supp. 624, 627 (S.D.N.Y.1978) (failure of disciplinary committee to follow Correctional Department regulations raises a constitutional claim justifying remedial action).

**8.** *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) In a prison setting the "touchstone of due process is protection of the individual against arbitrary action of government," *id.* at 558, 94 S.Ct. at 2976; however, exigencies of the situation allow limits to be placed on procedural process due to prisoners in a disciplinary setting. *Id.* at 561, 94 S.Ct. at 2977.

**9.** *Id.* at 455, 105 S.Ct. at 2774.

**10.** 821 F.2d 913 (2d Cir.1987).

**11.** *Id.* at 922.

**12.** *Id.* (citing *Myers v. Morris,* 810 F.2d 1437, 1461–63 (8th Cir.1987)).

**13.** *Cf.* Superintendent, Massachusetts Correctional Institution at *Walpole v. Hill,* 472 U.S. 445, 454–55, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985) (in the context of good time credits, the minimum requirements of due process are not met unless the findings of the disciplinary board are supported by some evidence).

**14.** *See Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

of custody is in dispute in this case.[15] Defendant Lords' claim that qualified immunity calls for judgment on the pleadings is unwarranted. Qualified immunity from liability is available to executive officials in their personal capacity only if the conduct at issue was not a clearly established violation of law at the time the conduct occurred, and only with respect to damages.[16] The focus of the inquiry is on the objective reasonableness of the official's conduct, as measured by reference to clearly established law.[17] The ultimate question of fact is whether the evidence upon which the disciplinary board based its determination was sufficient to meet the requirements imposed by the due process clause. Plaintiff avers that the failure to maintain a proper chain of custody was improper under State regulations, and that reliance on evidence produced in that way deprived him of due process. This is a matter to be considered upon all the evidence presented. These issues of fact may not be decided upon the defendants' motion for judgment on the pleadings.[18]

The defendants' motion for judgment on the pleadings as to defendant Lord is denied. The motion to dismiss the plaintiff's claim for damages is granted with respect to defendants Coughlin and Dalsheim.

So ordered.

---

**15.** Plaintiff also raised a question as to the lack of a confirmatory test. While the regulations do not specifically state that a second test is required to confirm a positive result in an EMIT test performed by an outside laboratory, the outside facility's assertion that its result should be confirmed by a second test indicates that the outside facility believed a positive result on a single test, without confirmation, was insufficient to constitute a complete test. In the absence of State regulations, the admissibility of a single, unconfirmed EMIT in a disciplinary proceeding is unsettled. *See Peranzo v. Coughlin,* 608 F.Supp. 1504 (S.D.N.Y.1985); *Storms v. Coughlin,* 600 F.Supp. 1214, 1222 (S.D.N.Y. 1984).

**16.** *See Salhuddin v. Coughlin,* 781 F.2d 24, 27 (2d Cir.1986).

**17.** *See, e.g., Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1981).

**18.** Recently, the Supreme Court stated that the first matter to be determined in a qualified immunity case is whether the alleged actions of the defendant were such that a reasonable officer could have believed them to be lawful. *See Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 3042 & n. 6, 97 L.Ed.2d 523 (1987). In that instance, the action was remanded for further development of the facts. *Id.; cf.* Superintendent, Massachusetts Correctional Institution at *Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).