**O. RODRIGUEZ, Plaintiff,**

**v.**

**Thomas A. COUGHLIN, III, Commissioner, Department of Correctional Services; Sally B. Johnson, Superintendent, Orleans Correctional Facility; Lieutenant Ronald Pikula, Sergeant Kuzminski, J. McGillicuddy, Wright, Edward Luczak, Emry Jamale, Michael Punch, and Mooney, Correction Officers, Orleans Correctional Facility, Defendants.**

**No. 88–CV–310C.**

United States District Court, W.D. New York.

Aug. 12, 1992.

Phillips, Lytle, Hitchcock, Blaine & Huber (Lisa McDougall, of counsel), Buffalo, N.Y., for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y. (Mark R. Walling, Asst. N.Y. State Atty., of counsel), Buffalo, N.Y., for defendants.

## BACKGROUND

CURTIN, District Judge.

On March 9, 1988, plaintiff O. Rodriguez, while an inmate at the Orleans Correctional Facility, filed this complaint *pro se*, pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated by being subjected to urinalysis testing and a search of his prison cell. This court appointed counsel to represent plaintiff, and plaintiff filed an amended complaint containing nine causes of action. Item 28. On December 6, 1989, defendants moved to dismiss plaintiff's causes of action numbered one through six, and nine. At oral argument, plaintiff's attorney agreed to withdraw the ninth cause of action. The court directed defendants to submit a memorandum concerning the effect of plaintiff's release from prison on his request for injunctive relief.

On June 11, 1990, defendants filed the requested memorandum, and also moved to dismiss the complaint in its entirety for failure to state a cause of action. After oral argument on September 11, 1990, the court dismissed plaintiff's application for injunctive relief, and deferred the decision on defendants' motion to dismiss until after further discovery.

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes the motion.

## FACTS

On March 9, 1988, plaintiff was ordered to the Orleans Correctional Facility Hospital and required to provide a urine sample under the supervision of a corrections officer. Plaintiff initially refused and asked to call a lawyer. Officer McGillicuddy told plaintiff that if he refused he would go to the "box" for six months or more and would lose good time. When plaintiff continued to refuse, Officer McGillicuddy telephoned Sergeant Kuzminski, and then told plaintiff that the Sergeant said plaintiff had three hours to urinate if he wanted to avoid this disciplinary action. Plaintiff then urinated into a bottle in the bathroom

in view of Officer McGillicuddy. No one else was present in the bathroom, but others were in an adjacent corridor and plaintiff does not know if they were able to observe.

After plaintiff supplied the urine specimen, Officer McGillicuddy informed him that Sergeant Kuzminski and Lieutenant Pikula "or somebody" had chosen his "chips" and it was plaintiff's turn to have a urine test. Plaintiff's "chip" had not actually been picked, however—another inmate's had—but plaintiff was tested. Item 76 at 3. Plaintiff's urinalysis test result was negative. Item 10, Ex. A; *see also* Tr. at 161. He was not charged with using drugs, was not locked in his cell, nor was he deprived of any privileges. Tr. at 56–60.

Nine months later, plaintiff was tested again. On December 2, 1988, Officer Jamale ordered plaintiff to report to the hospital. Another officer told him to urinate in a bottle, and plaintiff did so. The test result for the second urinalysis was also negative. Item 76 at 3. Plaintiff was not disciplined or locked in his cell or deprived of any privileges.

On January 12, 1989, plaintiff's cubicle was searched twice. Several items were seized as contraband, although most were returned. Item 76 at 4. Following a Tier II disciplinary hearing, an altered hot pot was confiscated, and plaintiff was given a reprimand. Tr. at 98–99. Plaintiff was not confined to his cell and did not lose any privileges. Nevertheless, plaintiff alleges that during the search a copy of the initial complaint in this case was removed and not returned by prison authorities. Tr. at 102. Plaintiff admits, however, that a "week or so" later he retrieved an extra copy from another inmate. *Id.* at 104–06.

Plaintiff alleges in his first six causes of action that each urine test constituted: (1) An unreasonable search and seizure, in violation of the Fourth Amendment; (2) a due process deprivation, in violation of the Fifth and Fourteenth Amendments; and (3) cruel and unusual punishment, in violation of the Eighth Amendment. Item 28. Regarding the cell search, plaintiff alleges in the remaining two causes of action that his Sixth and Fourteenth Amendment rights of access to the courts were violated by "spurious" misbehavior reports written to "harass" the plaintiff, Item 28 at 10, and by the removal and failure to return one of his legal documents. *Id.* at 11–12. Plaintiff also alleges that the removal of his legal document violated his First Amendment right to communicate with his attorney. His demand for injunctive relief having been dismissed earlier by the court, plaintiff continues to seek punitive and actual damages, and attorney's fees.

Defendants argue in their summary judgment motion that neither the urinalysis nor the cell-search allegations state a cognizable claim, and that in any event qualified immunity should bar plaintiff's urinalysis claims.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure directs that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In deciding whether summary judgment is appropriate, a court must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party. *Harlow v. Fitzgerald,* 457 U.S. 800, 816 n. 26, 102 S.Ct. 2727, 2737 n. 26, 73 L.Ed.2d 396 (1981). The moving party's summary judgment burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The opposing party must evidence specific facts which are both significantly probative and material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When "a motion for summary judgment is made in the context of a qualified immunity defense," the question of whether the factual disputes are material is especially critical.

*Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992).

## I. URINALYSIS TESTING

### A. *Fourth Amendment "Unreasonable Search and Seizure" Claims*

■ The first question presented by plaintiff's complaint is whether the urinalysis testing procedures violated plaintiff's Fourth Amendment rights against unreasonable searches and seizures.

Plaintiff cites *Storms v. Coughlin,* 600 F.Supp. 1214 (1984), to support his assertion that his Fourth Amendment rights were violated. *Storms* appears at first glance to hold, *inter alia,* that urinalysis testing is analogous to other Fourth Amendment searches. *Id.* at 1217–18. However, the Second Circuit recently held that this conclusion in *Storms* was mere *dicta. See Molinelli v. Tucker,* 901 F.2d 13, 16 (2d Cir.1990).

The qualified immunity standard as stated by the Supreme Court establishes that government officials may be protected from personal liability under 42 U.S.C. § 1983 actions when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Second Circuit in *Molinelli* granted qualified immunity to prison officials who had subjected a prison employee to urinalysis testing, reasoning that "there was no unequivocal holding in 1986, or even until *Skinner [v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) ] in 1989, that urinalysis is a fourth amendment search." *Molinelli,* 901 F.2d at 16.

Accordingly, because the Fourth Amendment status of urinalysis testing was not "clearly established" in either March or December, 1988, when plaintiff was tested, the prison officials named herein are entitled to qualified immunity, and plaintiff's Fourth Amendment claims are dismissed.

### B. *Fifth and Fourteenth Amendment "Due Process" Claims*

■ The second question raised by plaintiff's complaint is whether defendants' procedures for urinalysis testing violated plaintiff's Fifth and Fourteenth Amendment rights to due process of law. Plaintiff alleges that the manner in which the urinalysis testing program was administered violated plaintiff's rights in that prisoner selection was not random, plaintiff was given no advance notice of the testing program, and recordkeeping was inaccurate. Item 28 at 4–5.

"The first question to answer in a due process claim is whether plaintiff has been deprived of a 'life, liberty, or property' interest." *Nolley v. County of Erie,* 776 F.Supp. 715, 736 (W.D.N.Y.1991). Since "life" or "property" are not at stake here, it must be presumed that plaintiff is alleging a deprivation of liberty. Yet plaintiff fails to specify what liberty interest is implicated by the mere taking of his urine.

There is no dispute that plaintiff was not disciplined in any manner after the urine tests. Plaintiff has cited no case where the taking of an inmate's urine—in the absence of subsequent disciplinary proceedings—has given rise to a due process violation. On the contrary, urinalysis testing has been upheld as a constitutional and effective means for detecting and deterring prison drug use. *E.g., Peranzo v. Coughlin,* 850 F.2d 125, 126 (2d Cir.1988); *Jensen v. Lick,* 589 F.Supp. 35, 39 (D.N.D.1984). Accordingly, defendants are entitled to qualified immunity on plaintiff's Fifth and Fourteenth Amendment due process claims, and those claims are dismissed.

The cases cited by plaintiff do not suggest a contrary result. In *Storms v. Coughlin,* 600 F.Supp. at 1217 n. 2, 1225–26, plaintiffs' due process claims, as opposed to their claims under the Fourth Amendment, were specifically rejected. *Tucker v. Dickey,* 613 F.Supp. 1124, 1125 (D.Wis.1985), also relied upon by plaintiff, is a Fourth Amendment case. No due process claim was raised. In both *Soto v. Lord,* 693 F.Supp. 8, 15 (S.D.N.Y.1988), and *Soto v. Coughlin,* 666 F.Supp. 634, 635

(S.D.N.Y.1987), the district court held that a liberty interest was at stake once a tested inmate was disciplined.

### C. *Eighth Amendment "Cruel and Unusual Punishment" Claims*

█ Plaintiff's remaining contention regarding the urinalysis testing program is that it violated his Eighth Amendment right to be free from cruel and unusual punishment.

> "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by [the Eighth Amendment]."

*Kingsley v. Bureau of Prisons*, 937 F.2d 26, 31–32 (2d Cir.1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)).

Random urinalysis seeks to secure a *safer* prison environment, so it is difficult to see how subjecting a prisoner to urinalysis constitutes a "lack of due care for the prisoner's interests or safety." *Id.* at 31. Plaintiff's urinalysis testing, having been conducted in accordance with established guidelines, cannot be said to constitute "obduracy and wantonness." Thus, plaintiff's Eighth Amendment claims are also dismissed.

## II. CELL–SEARCH/LOSS OF LEGAL DOCUMENT

█ Unfettered access to prison cells by prison officials is necessary to uncover drugs and contraband which pose a threat to prison safety. *Hudson v. Palmer*, 468 U.S. 517, 527, 104 S.Ct. 3194, 3200–01, 82 L.Ed.2d 393 (1983). While plaintiff argues that the search of his prison cell constituted "spurious" harassment, contraband was removed as a result of that search and plaintiff was reprimanded following a disciplinary hearing which he does not claim was procedurally defective or violative of his rights.

The only evidence plaintiff offers to support his assertion that the cell search was intentionally conducted to harass him is that a legal document was missing after the search. Assuming, as the court must, that this legal document was in fact lost in the process, the question remains as to whether plaintiff's right of access to the courts and to his attorney was violated thereby.

Plaintiff testifies that he had various legal papers in separate manila envelopes stacked in a file box in his cell. Tr. at 136. When he returned to his cell after the search, he found "all this stuff I had in the boxes, neat, legal papers and stuff, like I said, just dump[ed] ... on the floor, scatter[ed] ... all over around on the floor." Tr. at 135. The only item missing besides those originally identified as contraband was the original complaint in this case. *Id.* Plaintiff admits that he received an extra copy of the missing document a "week or so" after it was lost. Tr. at 104–106.

"[P]risoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts." *Hudson v. Palmer*, 468 U.S. at 523, 104 S.Ct. at 3198. Defendants might be held liable under 42 U.S.C. § 1983 if the confiscation of plaintiff's legal materials was in retaliation for the exercise of his constitutional rights, or if he was actually deprived of access to the courts. *Hodgin v. Agents of Montgomery County*, 619 F.Supp. 1550, 1553 (D.Pa.1985). Plaintiff points to *Morello v. James*, 810 F.2d 344, 347 (2d Cir.1987), in which the Second Circuit held it was a factual question whether Morello's right of access to the courts was abridged by the removal of his legal papers. Morello, however, had specifically alleged that the loss of his legal papers "caused him irreparable harm in perfecting his appeal," and he endeavored to demonstrate this by introducing evidence as to his brief's irreplaceability.

Plaintiff in the instant dispute has not alleged any harm from the temporary deprivation of his complaint, much less any facts supporting such a charge. The Sec-

ond Circuit, affirming a summary judgment dismissal in the context of the loss of mailed legal papers, has held that:

> [E]ven assuming that prison officials were responsible, we believe that the claim was properly dismissed, as this was the sole instance complained of where a portion of a letter was missing and, as indicated above, there is no indication that Morgan suffered any damage as a result of not receiving these papers.... Standing alone, the loss of these papers seems inadvertent and hardly the basis for a successful constitutional assault.

*Morgan v. Montanye*, 516 F.2d 1367, 1372 (2d Cir.1975). The court finds the instant situation analogous to that presented by *Morgan.* Accordingly, summary judgment is hereby granted to the defendants on plaintiff's cell-search claims.

For the foregoing reasons, defendants' motion for summary judgment is granted. Plaintiff's claims have been dismissed in their entirety.

Judgment shall issue in accordance with this opinion and order.

So ordered.