Donald FRAZIER and Ansel
Caines, Plaintiffs,

v.

Adolph FORGIONE and Michael
Williams, Defendants.

No. 87–CV–774C.

United States District Court,
W.D. New York.

April 3, 1995.

**880**

Phillips, Lytle, Blaine, Hitchcock & Huber (Michael B. Powers, of counsel), Buffalo, NY, for plaintiffs.

G. Oliver Koppell, N.Y. State Atty. Gen. (Andrew Lipkind, of counsel), Buffalo, NY, for defendants.

### DECISION AND ORDER

CURTIN, District Judge.

Plaintiff Donald Frazier[1] filed suit against defendant Correctional Officers Adolph Forgione and Michael Williams[2] under 42 U.S.C. § 1983, claiming that the defendants intentionally withheld certain legal papers from him for a period of more than two years in violation of the First Amendment, the due process clause of the Fifth and Fourteenth Amendments, and the privilege and immunities clauses. Defendants do not dispute their failure to deliver the legal materials, but deny any intent to deprive plaintiff of his papers. Defendants contend that while plaintiff may have shown some negligence on their part, he has not proven that their conduct was intentional.

1. Before the trial began, counsel for plaintiff Ansel Caines informed the court that he had discussed the matter thoroughly with his client and had received authority from Mr. Caines to withdraw his claim. Therefore, the Caines action is dismissed without costs.

### I. Admission of Plaintiff's Deposition Testimony

As a preliminary matter, the plaintiff seeks inclusion of his deposition testimony into evidence because he was not present at the trial. The trial was originally scheduled to begin on November 7, 1994. Notice of the trial date was given to plaintiff's counsel at a meeting in early September and confirmed by order entered several days later. Notice of the trial date was also given to plaintiff, who was then in custody in a New York State correctional facility. Before the trial began, plaintiff completed his state court sentence and was released.

A few days before November 7, plaintiff's counsel informed the court that he had not been able to contact his client. On November 7, 1994, at counsel's urging, the trial was adjourned until December 6, 1994, with the understanding that the trial would proceed on that date whether or not plaintiff was available.

When plaintiff did not arrive in court on December 6, his attorney attempted to offer his deposition testimony, citing Rule 32(a)(3)(B) of the Federal Rules of Civil Procedure. Under that section, the deposition of a witness, whether or not a party, may be used at trial by any party for any purpose if the court finds that the witness is at a greater distance than 100 miles from the place of trial, unless it appeared that the absence of the witness was procured by the party offering the deposition. In several cases, depositions of missing plaintiffs have been permitted. *Richmond v. Brooks,* 227 F.2d 490 (2d Cir.1955); *Carey v. Bahama Cruise Lines,* 864 F.2d 201 (1st Cir.1988). In this district, in *Nash v. Heckler,* 108 F.R.D. 376 (W.D.N.Y.1985), Judge Elfvin permitted a deposition into evidence where the witness was more than 100 miles from the place of trial.

2. In the order of March 18, 1994 (Item 106), the action against Superintendent Charles James was dismissed. At the beginning of trial, the action against Melvin James was dismissed. Melvin James was the Watch Commander who is referred to in this order. The order of dismissal was granted, because Melvin James died before trial. The dismissal was not opposed by plaintiff.

However, in every one of these cases, the plaintiffs offered proof that they were more than 100 miles away. In our case, we do not know where plaintiff is. His attorney has attempted to contact him on several occasions at his family home in New York City without success. I find that it is the burden of plaintiff to prove that he is more than 100 miles from the place of trial, and he has not done so. Therefore, the motion to admit the deposition testimony is denied.

## II. Factual Findings

Since plaintiff was not present, the record was developed through exhibits and the testimony of the defendants, who were called as witnesses by plaintiff's attorney. Based on that record, the following constitutes the court's findings of fact and conclusions of law.

In 1987, plaintiff Donald Frazier was an inmate at Collins Correctional Facility, assigned to work in the prison library as a clerk. Generally, he was under the supervision of Michael Williams, who was the regularly assigned law library officer. When Williams was unavailable or had a day off, defendant Adolph Forgione took his place. Frazier used an assigned desk where he stored various legal materials in the library.

On April 17, 1987, another inmate accused plaintiff of assaulting him. Although plaintiff denied any involvement in the alleged attack, he was charged with violating prison rules prohibiting assault. A Tier III hearing was held, and plaintiff was found guilty of the charge and sentenced to two months' confinement in the Collins Secured Confinement Area ("SCA").

Shortly after plaintiff went to the SCA, Williams instructed a clerk to take Frazier's legal papers from his desk and place them in an envelope, on which Williams printed "Frazier 86–T–0155." This envelope (Ex. 29) contained the legal papers at issue (Exs. 30–67). According to Williams, these papers were placed in the drawer of the desk which Frazier had been using.

Correctional Officer Forgione testified that another officer asked him to retrieve Frazier's legal papers from Frazier's desk and take them to Frazier. Forgione searched the desk and located some papers, which he showed to Frazier. Frazier said that these were not the papers he was looking for. Rather, they were described as legal notes which Frazier had taken while assisting other inmates. Forgione searched through Frazier's desk again, but found nothing further.

Forgione told Williams that Frazier was looking for additional legal documents which Forgione could not locate. Williams did not tell Forgione that he had taken the documents, and placed them in an envelope. At his deposition, Williams said that he could not recall discussing the missing records with Forgione. Williams testified that when he told a supervisor or sergeant that he had taken Frazier's legal papers, he was ordered by the supervisor or sergeant not to give the legal papers back to Frazier at that time. Williams could not remember the name of the supervisor who gave him that instruction. He said nothing to Forgione about this conversation with his supervisor.

Defendants assert that Frazier was not entitled to have his papers delivered immediately based on a Department of Correctional Services ("DOCS") directive which provided that when an inmate was placed in a unit such as the SCA, his items of personal property, including legal papers, were not to be given to him for at least the first three days. In this case, Frazier's original placement was in the nearby infirmary due to the crowded conditions in the SCA. Understandably, this may have been a reason why the papers were not delivered to him immediately, but such reason cannot explain the two-year disappearance.

Officer Forgione also said that the watch commander told him not to return Frazier's documents until Williams had an opportunity to review them to see if Williams was named by Frazier in any proposed lawsuits. Defendants argue that Forgione's testimony is so confusing that it should be substantially discounted. Although I agree that his testimony was confusing and contradictory, his statements concerning William's review of Frazier's papers are supported by Exhibit 1, which was prepared jointly by Frazier and Forgione. Forgione testified that when Fra-

zier asked him to notarize this document in July 1987, he read the document carefully to be sure that the statement was true before he notarized it. Forgione's attitude about the function of a notary was unique, but it adds credence to his testimony. In fact, the document reads like an affidavit from Forgione rather than from Frazier. There is merit to the defense argument that Forgione changed his testimony on cross-examination, but he reverted on redirect to affirming the correctness of his original testimony. In part, the affidavit reads as follows:

> On the date of 04/17/87, upon the request of inmate Donald Frazier, # 86TC155. I Correction Officer A.L. Forgione, was called to the hospital area where inmate Frazier was confined to awaite [sic] a disciplinary hearing relevant to an assault. Fraziers [sic] request was for his "personal legal documents" which he had left in the Law Library of Collins I where he was assigned as a Law Clerk.
>
> I informed inmate Frazier on that date of 04/17/87; that his Legal papers were being held by the Watch Commander, Lieutenant James. James held the Legal documents for C.O.M. Williams to go through to reassure he was not mentioned or named in any of the documents correlated to Litigation on the basis of redress in the nature of an action at law.

Ex. 1.

There is no direct proof that Williams reviewed the contents of the envelope containing Frazier's papers. However, circumstantial evidence supports plaintiff's assertion that Williams was aware of the contents, including Frazier's draft of an Article 78 proceeding naming Michael Williams as a respondent (Ex. 31). Forgione testified that Lt. James, the watch commander, said that the papers should not be returned immediately to the plaintiff to give Williams an opportunity to examine them. Williams himself said that he had the envelope marked and placed in a drawer, which was within a few feet of his regular duty station. During discovery in this litigation, when there was a demand made for production of the envelope, Williams was able to retrieve it without difficulty.

There was also evidence of friction between Williams and Frazier just prior to Frazier's placement in SCA, which may have given Williams reason to suspect that Frazier desired to proceed with legal action against him. Early in April, before Frazier was sent to the SCA, a series of disputes arose between Williams and Frazier about Frazier's work in the library. On April 3, Williams filed an unfavorable progress report about Frazier, explaining that Frazier was so involved with doing his own work that he neglected his duties to others (Ex. 16). On April 4, Williams sent a note to the Inmate Placement Coordinator suggesting a program change for Frazier (Ex. 17). In return, on April 9, Frazier wrote to Lieutenant James, complaining that Williams directed him to perform porter's work (Ex. 5). On the same day, Williams filed a misbehavior report because Frazier refused to comply with Williams' order to clean up a mess he had made in the library with paper clippings (Ex. 18). Since Williams had made several complaints against Frazier early in the month, it is reasonable to assume that he might well believe that the Frazier envelope might have contained a draft of an action against him.

### III. Liability

In *Bounds v. Smith*, 430 U.S. 817, 824, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977), the Supreme Court held that the state "shoulder[s] affirmative obligations to assure all prisoners meaningful access to the court." It explained that this "fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation of filing of meaningful legal papers by providing prisoners with ... adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498.

The evidence is sufficient to find that Williams knowingly withheld the envelope from Frazier in violation of his constitutional right to access to the courts. Williams had contact with the documents soon after Frazier went to the SCA facility. Williams' supervisor directed that the papers be held for a short period so that Williams could examine them. Because of the prior disputes between

Frazier and Williams and the direction given by the watch commander to withhold the papers until Williams could review them, it is fair to assume that Williams examined the file. Through Forgione, Williams was aware that Frazier had made a demand for the documents. Nonetheless, he never told Forgione where the papers were, nor did he take steps to see to it that the papers were delivered to Frazier after he had finished examining them.

Defendants, citing *Rodriguez v. Coughlin,* 795 F.Supp. 609 (W.D.N.Y.1992); *Pickett v. Schaefer,* 503 F.Supp. 27 (S.D.N.Y.1980); and *Cookish v. Cunningham,* 787 F.2d 1 (1st Cir.1986), argue that they cannot be found liable absent a showing of actual prejudice. These cases are distinguishable, in that none dealt with a deprivation of materials which lasted longer than two weeks; whereas in our case, legal papers were withheld for a two-year period. In *Morello v. James,* 810 F.2d 344 (2d Cir.1987), the plaintiff was entitled to go forward with his action even though the materials were only withheld for six days. Moreover, defendants interpret "actual prejudice" too narrowly. In *Rodriguez,* this court stated that "[d]efendants might be held liable under 42 U.S.C. § 1983 if the confiscation of plaintiff's legal material was in retaliation for the exercise of his constitutional rights, *or* he was actually deprived of access to the courts." 795 F.Supp. at 613 (emphasis added).

Withholding the papers for a short period of time would have been justified and within the direction and spirit of the regulations, but neither Lieutenant James nor Officer Williams had the right to withhold the papers for an extended period. Therefore, the court finds that there is liability on the part of Williams. He deliberately withheld the legal papers from plaintiff.

However, the evidence presented does not show that Officer Forgione withheld any documents. In fact, he attempted as well as he could to find the documents requested by Frazier. Thus, the action against defendant Adolph Forgione is dismissed.

## DAMAGES

Trial exhibits 30–67, the papers in the envelope (Ex. 29) which were not available to Frazier for a period of two years, include rough drafts of applications to various courts, letters, and responding papers received from the Attorney General and others, copies of letters he had written to attorneys, and copies of orders he had received from various courts. Defendants argue that plaintiff incurred no damage when his papers were withheld, since he had copies of all of the documents and therefore was able to pursue all his legal claims. In their post-trial brief, defendants have analyzed each of the claims which the plaintiff was working on when his papers were confiscated to show that plaintiff was not injured when the contents of the envelope were withheld (*see* Item 117).

Defendants' analysis makes clear that almost all of the motions which were contained in the envelope were brought to a court and decided. The unavailability of the envelope and its contents did not interfere with plaintiff's efforts to pursue claims in various courts. The analysis provided by the defendant is not challenged by plaintiff, except the case of a claim for about $200.00 with the City of New York (Item 31). Frazier took no action on this claim, even though he had the claim form in his possession for almost one year before he went to the SCA. The form dated May 6, 1986, provided that if the claim was not settled, an action had to be filed within 1 year and 90 days of the date of the occurrence (Ex. 63). Plaintiff did not sue on this claim, and there was no evidence that he desired to do anything with it.

Exhibits 32, 48, and 52 relate to plaintiff's motions before the state court in support of his claim that the drug that he was charged with selling was not a controlled substance within the meaning of the New York Penal Law. In fact, he was able to make this argument to the state court. The argument was considered both on direct appeal from conviction (*see* Exs. 82 and 83) and in other proceedings (Exs. 68–69, 81–83). All applications were denied. These were the only claims discussed by plaintiff's attorney during summations as supporting his argument for relief. No mention was made of the

action against Mr. Williams, but it is evident that his proposed action against Williams did get to court. The rough draft of his motion dated April 5, 1987 (Ex. 31), proposes an action against Williams for failure to abide by certain procedures leading up to a Tier II hearing. The history of this litigation is set forth in Exhibits 37–39, 55–56, 58, 66, and 73–74. The proceeding was dismissed by order of June 29, 1987 (Ex. 75). The envelope also contained a proposal for a motion to obtain library access at Downstate Correctional Facility. The pleadings did get to the court but were never pursued, perhaps because Mr. Frazier was transferred to Collins Correctional Facility.

It is fair to conclude that the plaintiff did not suffer any actual damage because he was able to pursue all of his intended actions without the papers at issue. However, I also find that plaintiff has established that Williams intentionally withheld the legal papers at issue in the violation of plaintiff's right to access to the court. Thus, an award of nominal compensatory damages is appropriate. *Farrar v. Hobby,* 506 U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992).

 Furthermore, I find that the circumstances of this case entitle plaintiff to punitive damages. Punitive damages can be awarded "in a proper case under § 1983 for the purpose of deterring or punishing violation of constitutional rights." *Carey v. Piphus,* 435 U.S. 247, 257 n. 11, 98 S.Ct. 1042, 1049 n. 11, 55 L.Ed.2d 252 (1978). Plaintiff has proven that there was an intentional and continuing violation of a substantive constitutional right. Williams confiscated papers that Frazier was using to proceed in court actions. Williams could not have known when he failed to return the papers that Frazier had copies or could reconstruct his notes. Even if defendant Williams' conduct is not motivated by malice or evil intent, he acted deliberately over a two-year period to deny Frazier's rightful access to the courts. This constitutes "a reckless or callous disregard of, or indifference to, the rights or safety of others" (*Smith v. Wade,* 461 U.S. 30, 52, 103 S.Ct. 1625, 1638, 75 L.Ed.2d 632

(1983)), sufficient to warrant an award for punitive damage.

For the reasons discussed, the court awards plaintiff Donald Frazier the sums of $1.00 in compensatory damages and $500.00 in punitive damages. In awarding punitive damages, the court has considered what amount would be sufficient to make clear to correctional officers that they may not participate in conduct similar to that set forth in this case. I believe that an award of $500.00 will be sufficient to give notice to correctional officers that they cannot intentionally withhold legal materials from inmates.

Counsel shall meet to make an effort to settle the issue of attorneys' fees. If the amount of attorneys' fees cannot be reached by agreement, plaintiff's attorney shall file an affidavit in support of his application by May 1, 1995, and the court will meet with counsel on May 16, 1995, at 3 p.m. The Clerk shall stay entry of judgment until after the amount of fees is determined.

So ordered.